HARRY B. REID, Appellant, v. ANTON·G. GEES and HENRY W. HAGEMEIER.

Division One, March 28, 1919.

1. **LEASE: Lack of Mutuality.** A written lease which in no wise binds the lessee to pay the rent named or to do or ·perform anything, is void for lack of mutuality.

2. ————: **Deed Poll.** A written lease signed by the lessor alone creates an estate at will, and under the statute, Sec. 2781, R. S. 1909, is void as a lease for a term of years.

3. ————: **Executed in Duplicate: Presumption of Execution by Lessee.** Where the ordinance provided that in the lease of a common by the town, the instrument should be in duplicate, one executed by the town and the other by the lessee, and the only instrument recorded or offered ·in evidence was the copy executed by the town clerk alone, presumption of right action on the part of the town clerk will not authorize an inference that the lessee· signed the other copy. It might be presumed that the clerk prepared two copies, but that is as far as the presumption will go; the act of signing the copy by the lessee was for him to determine, and in the absence of any showing it will not be presumed that he did sign it. And the only instrument offered in evidence being one signed by the town clerk in the name of the trustees alone, no judgment adjudging that the·lessee's heirs have a right to claim under the 999-year lease can be rendered.

Appeal from St. Charles Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Theo C. Bruere* and *Montgomery & Montgomery* for appellant.

(1) The Legislature by the Act of December 22, 1824, R. S. 1825, p. 211, gave the trustees of any town having a common annexed to it, the power to lease such commons. This act was not repealed in the revision of 1835, but expressly excepted from the repealed laws. Sec. Ninth, Sec. 34, R. S. 1835, pp. 384 and 385; Wells v. Pressy, 105 Mo. 179. (2) The Town of St. Charles did not get title to the land in controversy by the Act of Congress of January 27, 1831, as defendants contend. City v. St. Louis, 25 Mo. 461; Hammond v. St. Louis Public Schools, 8 Mo. 72. (3) In the grant of the lease to Isabella Reid, for her life, and at her death to vest in her heirs, the word heirs does not refer to her heirs as determined by the common law, nor to her heirs as defined by the laws of Missouri at the date of the grant, April 5, 1842, but to her heirs as determined by the laws of Missouri at the date of her death (1914). (a) At common law, an heir was one born in lawful wedlock, and upon whom the law casts the estate in lands on the death of the ancestor. Jarboe v. Hay, 122 Mo. 354. (b) But whoever takes under the statutes of descent, takes as an heir. An heir is no less an heir because of lack of blood relationship. A surviving spouse, a stranger to the blood, may be an heir. Weston v. Weston, 38 Ohio St. 473, 478; Rawson v. Rawson, 52 Ill. 62; Mace v. Cushman, 45 Me. 250; Brower v. Hunt, 18 Ohio St. 311; Gibbons v. Fairlamb, 26 Pa. St. 217, 219; Hyde v. Bank, 8 Rob. 416; Jarboe v. Hay, 122 Mo. 354. (c) He who dies leaving an adopted child, does not die "without any children or other descendents in being." Moran v. Stewart, 122 Mo. 299 and 132 Mo.

73. (d) Under the statutes of descent, the words children, issue and kindred, each refer to and include adopted children. Fosburgh v. Rogers, 114 Mo. 133. Under a grant to A for life, remainder to A's children, or to A's heirs at law, an adopted child would take the remainder. Sewall v. Lathrop, 1 Lathrop (Mass.) 162; Gilliam v. Trust Co., 78 N. E. (N. Y.) 697; Butterfield v. Sawyer, 187 Ill. 518; Hochstein v. Berghauser, 56 Pac. (Cal.) 547. (4) The remainderman has no right to possession, and hence no cause of action to recover same until the death of the life tenant. Hauser v. Murray, 256 Mo. 58, 86. (5) When Nathaniel Reid, trustee and life tenant, and Isabella Reid, life tenant, attempted to surrender the lease to the Town of St. Charles and, as a part of the same transaction, acquired the fee by purchase from the town (or attempted to do so), they could surrender only what they had, and hence could not surrender the remainderman's rights; but if their attempt to surrender the lease had been successful, the town's conveyance back to them, would have restored all of the remainderman's rights to their full force. Kohle v. Hobson, 215 Mo. 213, and cases cited. (a) If the trustee acquires an interest adverse to his beneficiary, such purchase inures to the benefit of the *cestui que trust.* 39 Cyc. 296-298; Thomas v. Zumbalen, 43 Mo. 478. (b) When the life tenant acquired the fee he assumed the duties of both landlord and tenant, and thereby the possibility of a forfeiture of the lease was destroyed, at least until the life tenant's death. (6) The act of James Lindsay in making a deed not conveyed his interest therein before his death. It seven years later to Nathaniel and Isabella Reid, whereby he attempted to convey a fee to them in the leasehold and to cut out the remainder created by his first deed, did not change or impair the estate of the remainderman created by the first deed. Ottomeyer v. Pritchett, 178 Mo. 164. (7) A lease for 999 years is a chattel real, as respondents claim, and would have descended to James Lindsay's executor or administrator if he had

would also have descended to Isabella Reid's executor, if she had had an estate of inheritance therein, instead of a life estate. (8) There may be life estates and remainders in personal property and especially in chattels real which are interests in real estate. 6 Cyc. 615, 650; Hayden v. Stinson, 24 Mo. 182; Hitchcock v. Clendennin, 6 Mo. App. 99; Lewey v. Lewey, 34 Mo. 367; McCormick v. Kirby, 63 Mo. 149; Boone v. Stover, 66 Mo. 434; R. S. 1909, sec. 2873. (9) When possession of demised premises is withheld from the lessee, he may maintain ejectment against the person who so wrongfully withholds possession. 24 Cyc. 1051; 15 Cyc. 23; Hughes v. Hood, 50 Mo. 352. (10) Assuming that it is a material matter as to whether or not the lease was a binding one on James Lindsay; then when James Lindsay assigned the lease to Nathaniel and Isabella Reid, and they accepted the assignment, and thereafter from 1842 to 1871 paid rent thereunder, and then Nathaniel Reid and Isabella Reid filed a petition over their signatures alleging that they are the owners of the lease, all three of them and those claiming under them are estopped to assert that the lease did not bind them. (11) The town clerk had authority to execute the lease. (a) The Act of Dec. 22, 1824, gave the trustees of every town having a common, authority to lease the same or any part thereof. 1 R. S. 1825, p. 211. (b) On May 29, 1830, the trustees of the town passed an ordinance authorizing the leasing of its commons for 999 years at a certain annual rental. (c) On February 13, 1833, the Legislature empowered the trustees of St. Charles to appoint a town clerk and to fix his duties. (d) On June 5, 1837, the trustees passed an ordinance directing the clerk to fill up two leases to this land, one of which should be signed by the clerk and delivered to the lessee, and the other to be signed by the lessee and kept by the clerk. The former was duly recorded and shown in evidence. The latter could not be found. The rent being fixed by ordinance, the filling out was a mere ministerial duty. (e) Nothing to the contrary

being shown, it will be presumed that the clerk did his duty. 16 Cyc. 1076-8; Ivy v. Yancey, 129 Mo. 509. (f) An attempt to overthrow a business transaction occuring at such a remote period, is regarded with disfavor by the courts, and very liberal presumptions will be indulged to prevent irregularties in such affairs from being held fatal. Williams v. Mitchell, 112 Mo. 313. (g) Under Sec. 6318, R. S. 1909, our courts have held that such a lease is prima-facie valid, even without special authority for its execution being shown, and that a purchaser buying after it has been of record for ten years, buys with notice of its contents. Wells v. Pressy, 105 Mo. 178; McDonald v. Schneider, 27 Mo. 405.

*M. P. Murray, Carter, Collins & Jones* and *Charles E. Kimball, Jr.*, for respondents.

(1) It is sufficient answer to the claims of the appellant in this action that he claims as an adopted child of Isabella Reid. Sec. 1673, R. S. 1909; Reinders v. Koppelman, 94 Mo. 338; Clarkson v. Hatten, 143 Mo. 59; Hockaday v. Lynn, 200 Mo. 468. (2) Appellant's case is founded on the erroneous conception that the instrument executed in 1838 by the City of St. Charles to James Lindsay created a leasehold interest in him for a 999 year period. This conception is erroneous; first, because the instrument is not signed by both parties as required by the statutes of this State; and, second, even if it had been signed by proposed lessee, it contains no provisions emanating from him and by which he is to assume any obligations under it. Sec. 2781, R. S. 1909; 4 Cruise's Digest, Ch. 5, p. 58; 24 Cyc. 902; Valle v. Kramer, 4 Mo. App. 570; Brumfield v. Carson, 33 Ind. 94; Clemens v. Bloomfield, 19 Mo. 118; Combs v. Midland Transfer Co., 58 Mo. App. 112; Versteeg v. Longo Fruit Co., 158 Mo. App. 131; Welsh v. Fred Heim Brewing Co., 47 Mo. App. 608. (3) The presumption, relied on by appellant, that "official acts

are properly performed, and, in general, that everything in connection with the official act was legally done'' does not aid the appellant in relying upon an instrument signed by only one party. (a) This is because, first, the presumption is not that an official has performed any independent act enjoined on him by law, but, is, that when it is shown that an official performed some such act, it is presumed that he performed it legally, and has performed all other acts prior to or after it that are essential to its legality; and, second, because the ordinance provides, ''The other shall be signed by the lessee and left in the hands of the clerk.'' The direction is not to the clerk but to the proposed lessee; hence it is not an official act which the ordinance contemplates, but an act by the proposed lessee. (b) Furthermore, this presumption extends only to ministerial acts, as appellant concedes. But he says the drafting and attending to the execution of a lease is a ''mere ministerial duty.'' No authority is cited for this proposition. It is wholly unsound in our opinion. (4) By their contentions in this connection respondents are not ''attempting to overthrow a business transaction occurring at a remote period,'' perforce of which the appellant is entitled to very liberal presumptions to prevent irregularities from being fatal. The inquiry here is, what was the transaction between St. Charles and James Lindsay? Appellant admits he has established only what might be termed a unilateral contract of lease, but seeks, by the aid of presumptions, to give it the effect of a lease signed by lessee, also. Respondents seek to overthrow nothing. They ask only that the court shall give legal effect to the transaction as established by the evidence. (a) Nor is appellant aided in this connection by Sec. 6318, R. S. 1909. Respondents are not here questioning the execution by the party whose name appears on it of the instrument offered in evidence, nor its genuineness. (5) It resulted, therefore, that when James Lindsay entered into possession of the land referred to, not under a written

contract executed by both parties thereto, he became
a tenant at will; or, it being farm land, a tenant from
year to year. The further corollary follows that James
Lindsay had no 999-year leasehold interest in this
property when he executed the conveyance to Nathaniel
Reid, and that there was no remainder in such a lease-
hold, for appellant to take as her heir. His whole case,
therefore, fails.   (6) A remainder over or future interest
cannot be created by deed in a leasehold estate, even
though it be for a term of 1,000 years, to take effect
after a life estate therein. Fearne on ".Remainders"
(10 Ed.), p. 4; Gray on Perpetuities, secs. 71-76, 807,
and notes; Kale "Future Interests," sec. 189, p. 271.
(7) A remainder must vest during the existence of the
particular estate or at the very instant of its deter-
mination, otherwise it will never take effect at all. A
contingent remainder will be destroyed by the determina-
tion of the preceding estate by forfeiture, surrender,
merger or otherwise. Fearne, chap. 5, p. 316.

GRAVES, J.—Action to determine title and parti-
tion certain real estate in St. Charles County, at one
time the commons of the City of St. Charles, Missouri.

In the petition plaintiff alleges that he and Anton
G. Gees owned in equal parts a 999-year lease on
the property, and that defendant Hagemeier and
Gees claim interest in such real estate adverse to him.
The second count is the ordinary one in partition. The
leasehold is alleged to have begun July 1, 1838.

By answer defendant Gees avers that defendant,
Hagemeier is his tenant, and has no further interest
therein: that he is the owner in fee thereof, and that
there is no valid lease on the premises commencing
July 1, 1838. The answer then thus proceeds for a
space:

"And defendants state that if there ever was a
lease upon said premises, or what purported to be a
lease for 999 years, it was a lease purporting to have
been made by the trustees of the Town of St. Charles,

County of St. Charles, State of Missouri, dated (as stated in said petition), and that the date and delivery .of such instruments was upon Sunday, for which reason said instrument was void, as a lease, for 999 years; and that, at the time, the Town of St. Charles and its trustees did not have any authority from the Legislature of this State to make any lease whatever; that the only authority they then had was to sell the fee of said land and to give the owner of any lease, then existing, peremptory right and priority in the purchase of said real estate, in fee; that these defendants are informed and believe, that on Sunday, July 1, 1838, one Alexander T. Douglas, purported to be the clerk of the trustees of the Village of said St. Charles or clerk of the Town of St. Charles, made a certain writing, in the nature of a lease, to one James Lindsay, which purported to be for a term of 999 years, which paper was afterwards, on the 25th day of May, 1853, improperly spread upon the records of said county, and is a cloud for the title of the defendant, Anton G. Gees; that said lease purports to be of Commons then belonging to the inhabitants of the Town of St. Charles; that at the time of the execution of said lease, the Legislature of the State of Missouri had not authorized the making of the same; that the tile to said Commons, including the premises described in the petition, was originally derived from the King of Spain; and the right, title and interest (being title in fee) was acquired by the Government of the United States; that the equitable title to such real estate was conveyed from the Government of the United States, subject to the private grants made by the said king which over-lapped said territory, to the inhabitants of said Town of St. Charles, by an act of Congress, approved June 13 A. D. 1812; and that afterwards the legal title to said premises was conveyed to said inhabitants of said St. Charles, by an act of Congress of the United States, approved January 27 A. D. 1831, which act of Congress provided, among other things, that the title should so vest, to be sold

or disposed of, or regulated, in such manner as might be directed by the Legislature of the State of Missouri; that pursuant to said acts of Congress, the Legislature of this State did not provide for the leasing of said property, but did provide for the sale of said property, by an act of the Legislature of this State approved December 28 A. D. 1832, and by subsequent acts; that in and by said act of the Legislature, it was provided that:

" 'Sec. 1. The trustees of the Town of St. Charles be, and they are hereby authorized, to sell in fee simple forever, all, or any part, of the town lots, out lots, commonfield lots, or Commons, belonging to said town. The said trustees shall, by ordinance, fix upon such time, place, terms and manner of sale, as they shall consider most advantageous to the town.

" 'Sec. 2. The said board of trustees be, and they are hereby authorized, to execute deed in fee simple, to any person who may have leased any part of the town lots, out lots, commonfield lots or Commons for the part by him leased; providing the person holding such lease shall first pay the amount at which his part of the land is estimated in his said lease and surrender the lease to the corporation of said town.

" 'Sec. 3. The said board of trustees, whenever they sell, or convey any part of said lots or Commons shall execute to the purchaser a deed, with Special Warranty against the claims of the said town, and all persons claiming under it; which deed shall run in the name of "the inhabitants of the Town of St. Charles," shall be signed and acknowledged by the president of the board of trustees of said town, and shall be effectual to convey to the purchaser, all legal and equitable claim which accrued to the inhabitants of said town, by grant from the Spanish government, or the several acts of Congress, confirming title to said lands.'

"That the plaintiff is neither the purchaser, the creditor, nor an heir, capable of inheriting any interest in said lease or leasehold estate; and that the right

under which he asserts his claim to a half interest in said leasehold, is dark in his petition, so dark that these defendants are. unable to ascertain from the petition in what manner or from whom he claims to derive title; that said petition does not in any of the counts thereof, or in all of the counts thereof, taken as a whole, state facts constituting a cause of action in favor of the plaintiff.''

Then follows a plea of the several Statutes of Limitations. It is then further averred that the alleged and purported lease was surrendered. by the then claimants thereof to the City of St. Charles on May 6, 1871, since which time there has never been even a purported lease. That Nathaniel Reid and Isabella Reid (who were the claimants of said lease and ' who surrendered it) purchased the property from the City of St. Charles as they had the .right to do; that they borrowed $6000 on the property; that their mortgage or deed of trust was foreclosed, and at the sale John Rankin bought the lands; that by ejectment suit Rankin recovered the possession of the land, and that this defendant Anton Gees, by *mesne* conveyances, acquired the Rankin title. The answer then further proceeds:

"That no right, title or interest remained in said Nathaniel Reid or Isabella Reid, in and to any part of the real estate described in the petition, at any time after the recovery from them in said action of ejectment; that no heir of either of them has, or can claim, any interest in or to said real estate, or said leasehold; and that the .plaintiff has no inheritable blood, from either said Nathaniel Reid or Isabella Reid, or James Lindsay, Sr.; that said James Lindsay, Sr., by an instrument dated the 5th day of April A. D. 1843, conveyed said real estate (that is to say, his leasehold interest and said lease), one-half to Nathaniel Reid and one-half to Isabella Reid; and afterwards, it being supposed that there was a defect in the conveyance to said Isabella Reid, said James Lindsay, on the second day of February A. D. 1849, executed his further deed,

by which he granted one-half interest in said lease 'to said Isabella Reid, the language of the grant being: 'I have this day, granted, bargained and sold, and by these presents do bargain, grant and sell, unto her, the said Isabella Reid and to her heirs and assigns forever, the one undivided half part of the following lots or parcels of ground situated in St. Charles County, State aforesaid, on the Commons attached to and belonging to the Town of St. Charles, in said county, being the same land leased to me by the Board of Trustees of said Town of St. Charles, by lease dated the 1st day of July, A. D. 1838, for the term of 999 years, from and. after that date, and designated' on the plat of Evans Survey of block number 4 of said Commons, as lots 1, 2, 3, 9, and 10' (the boundary being here omitted for the sake of brevity); that at the time of making of said deeds the said Isabella Reid was still living and so continued to live until the 24th day of April, A. D. 1914; and that, at the time said undivided half interest in said leasehold was so vested in the said Isabella Reid, this plaintiff had no existence whatever; and that she, the said Isabella Reid, had no heirs whatever; and the said James Lindsay, Sr., was also living, though he died many years ago; that at the time he made these grants, he had no heirs, for the reason that he was living; and that by virtue of said conveyance, said Nataniel Reid and Isabella Reid, each, became the absolute owner of an undivided half of said lease and leasehold interest, which interest was attached to the reversion held and owned by the said City of St. Charles; and afterwards, when said City of St. Charles conveyed its reversionary interests to said Nathaniel Reid and Isabella Reid, as stated aforesaid, said lease became, and. was, as a matter of law, absorbed in the higher and larger estates and the lease thereby ceased to exist; and they held said real estate, in fee, stripped of said lease, by reason of the premises; and having fully answered, defendants pray they may be discharged.''

The reply was a general denial.

No question was raised as to the numerous defenses contained in the single count of the answer, which answer is extremely verbose, and covers both counts of the petition.

Finding and judgment for the defendant, and the plaintiff has appealed.

I.   I think this case can be determined upon one or two questions which go to the vitals of the case. Plaintiff claims a half interest in an alleged 999-year lease averred to have been made between the town authorities

Lease.   with one James Lindsay.   He claims as a belated adopted son of Isabella (Lindsay) Reid, who was the daughter of James Lindsay.   We say belated adopted son, because he was not adopted until he had reached the age of 45 years, and the adopting parent had reached the age of about 70 years.   The husband, Mr. Reid, was dead, and the wife Isabella Reid (at an advanced age) did the adopting.   Nor was this long before the institution of the present suit. But for the views which we have, a discussion of this adoption, or other adoptions hinted at in the briefs, would be aside the question.

The alleged 999-year lease under which the plaintiff claims, is as follows:

"This Indenture, Made and concluded this 1st day of July, 1838, between Ludwig E. Powell (and others), trustees of the Town of St. Charles, and their successors in office, of the first part, and James Lindsay, Sr. of the second part, Witnesseth:

"The parties of the first part, for and in consideration of the sum of $6.53¾, having by the said party of the second part before the sealing and delivery of these presents been paid in to the treasury of the corporation of the Town of St. Charles, receipt of which is hereby acknowledged, have granted, bargained, leased and to farm let, and by these presents do grant, bargain, lease and to farm let unto James Lindsay, Sr., his heirs and assigns, five certain lots [then follows a

description of the lots] for the term of 999 years and then to be renewed upon payment of half of the aforesaid amount, which said sum of $6.53¾ said James Lindsay, Sr., or his assigns shall continue paying therefor during the continuance of this lease, etc., over and above all taxes, etc.

"To have and to hold said lots to the only proper use of the said James Lindsay, Sr., his heirs and assigns for· and during the full end and term of 999 years next ensuing . . . "The aforesaid sum for which the above lot is leased is four per cent per annum upon the estimated value of said lot as fixed by the Board of Trustees.

"In witness whereof, by order of the Board of Trustees, the clerk has hereunto signed his name and affixed the seal of the aforesaid corporation.

"ALEX T. DOUGLAS,

"Clerk."

It should be noted that there is not a word in this paper purporting to come from Lindsay the grantee therein. He does not sign it. There is no agreement upon his part to assume the payment of the rent charged therein named. In fact there is not only an absence of his signature, but an absence of any words in the lease which would make an obligation on his part to do and perform any of· the things which would be required of a lessee. The very language lacks in mutuality of obligations. It indicates the payment of one year's rental, and further indicates that farm lands were under consideration. There is, however, a total absence of a promise by Lindsay to do more toward the payment of rent. In other words, there is an utter absence of mutuality in this purported lease. But beyond this we had a statute in Missouri, at that time, which covered the situation. It is now Section 2781, Revised Statutes 1909, and reads:

"All leases, estates, interests of freehold or term of years, or any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments, made or

created by livery and seizin only, or by parol, and not put in writing and signed by the parties so making or creating the same or their agents lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force.''

Under this statute cases of different kinds have been before the courts of this State. In some cases we have an instrument signed by the proposed lessor and not by the lessee (as here), and in others we have an instrument signed by the lessee and not by the lessor. In both classes the courts hold that there has not been a compliance with the statute, and as a consequence no creation of an estate for a fixed term longer than a year. [Clemens v. Bloomfield, 19 Mo. 118; Combs v. Midland Transfer Co., 58 Mo. App. 112; Versteeg v. Longo Fruit Co., 158 Mo. App. l. c. 131; Welsh v. Fred Heim Brewing Co., 47 Mo. App. 608; Vallé v. Kramer, 4 Mo. App. 570.]

So that we conclude that the alleged lease is not only void for want of mutuality, apparent upon the face, but void under the statute supra, which requires the signature of the lessee. When we say void we mean ineffective in the creation of a right to hold the premises for the long fixed period of 999 years. If Lindsay, the original alleged lessee, did not acquire an estate for a term of years, his grantee (which includes the party through whom the plaintiff claims) could not acquire one by any conveyance from Lindsay. This is elemental. The alleged title of plaintiff is dependent upon this original lease. With it out of the way, he has no standing. It must fall for the two reasons assigned, supra, unless saved by another point urged, which point we take next.

II. It is urged that the ordinance of the city authorized the signing of such lease in duplicate parts. By this we mean, that the ordinance authorized the city authorities to sign one copy, and the lessee Execution in Duplicate. to sign another, and that the two should constitute the lease. Had this been done, and

had the evidence in this case so shown, there would be less question of a lease, so far as the points made in paragraph one is concerned. There might remain the question of mutuality of promises but none as to signature under the statute.

However the trouble here is that there is no proof that Lindsay ever signed a duplicate. So far as the record shows he might have been content with possession and a tenancy at will, or from year to year. It devolved upon plaintiff to show a lease for a term. He plants himself upon this in his petition, but fails to show that Lindsay ever executed and delivered his copy of the contract.

For this gap in the evidence we are asked to presume that Lindsay did execute the duplicate contemplated by the ordinance. This we cannot do. It goes to the very vitals of plaintiff's case. We may presume that the officers of the city complied with the law, but that does not reach it. The signing of the lease was for the independent action of Lindsay. We might presume that the clerk prepared two copies of the lease (one to be signed by him as the city authority, and one to be signed by Lindsay), but this is as far as the presumption of duty well performed upon the part of the city official will go. The act of signing the copy by Lindsay was a matter for Lindsay to determine. It was he, who would complete the contract by his signature. No presumption as to rightful official conduct will show that he obligated himself under this contract. We can't show that individuals have signed given contracts by a presumption of right action. This, because it is up to individual determination whether or not they want to be bound by such contract.

It is up to plaintiff in this case to show a valid 999-year lease. This was not shown by the document he introduced. He had to go further and show that Lindsay executed it, and that there was mutuality in the contract. There is no legal presumption that Lindsay executed the contract of lease, by signing a

duplicate copy thereof, even if we could hold that there would be mutuality in the agreement when so signed. This absence of proof is fatal to the alleged lease.

Other interesting questions discussed in the briefs become immaterial. The judgment *nisi* is for the right parties and should be, and is, affirmed.

All concur; BOND, J., in result.