Strafford,
June 26, 1930.

PUBLIC SERVICE CO. OF NEW HAMPSHIRE *v.* LUETTA VOUDOMAS.

WALTER E. YOUNG *v.* SAME.

*Conrad E. Snow* (by brief and orally), for the plaintiff.

*Cooper & Hall* (*Mr. Hall* orally), for the defendant.

BRANCH, J. Both the statutory action and the writ of entry are essentially possessory in character (P. L., c. 357, ss. 13, 14; *Cheever* v. *Roberts*, 82 N. H. 289, 292), and in this case the right of possession alone is involved. There is no dispute in regard to the legal title to the stores in question and all technical objections to the propriety of the forms of action employed by the plaintiff have been waived by the defendant. Since the defendant now occupies the premises, the plaintiff can succeed only by showing that it has a better right to immediate possession. *Cheever* v. *Roberts, supra,* and cases cited. *Spaulding* v. *Bartlett,* 55 N. H. 304, 307.

The facts now reported remove the uncertainty, to which reference was made in *Voudomas* v. *Bragg,* 83 N. H. 270, 272, in regard to the ownership of the building in which the stores are located. It now appears that Young is the owner of the building with the full right to dispose of it as he sees fit. In the opinion last referred to, however, it was held that "the lease does not purport to deal solely with the building but includes the lessor's right, limited though it may have been, to occupy the land." The present case has therefore been argued by both sides as though Young were a tenant at will of the plaintiff of both land and building. The defendant bases her claim of right to the possession of the premises upon the lease from Young to her. The plaintiff places reliance upon the statement of this court in *Voudomas* v. *Bragg, supra,* that "no tenant at will can create 'any estate in another which will avail against the owner of the land'." The question of the extent of the right of a tenant at will to sublet a portion of the leased premises is therefore presented.

Generally in the absence of a covenant to the contrary, a lessee has the right to sublet the whole or a portion of the leased premises. 16 R. C. L. Tit: Landlord and Tenant, s. 374; *Note* to *Braunstein v. Corporation* (93 N. J. Eq. 419) in 23 A. L. R. 133, 135. The only limitation on this right at common law is that they shall not be sublet to be used in a manner inconsistent with the terms of the original lease or injurious to the premises. 23 A. L. R., *Note, supra,* 139. The plaintiff contends, however, that this right does not extend to tenancies at will.

It is well settled law that a tenancy at will cannot be assigned or transferred. *Voudomas* v. *Bragg, supra; Austin* v. *Thomson,* 45 N. H. 113, 120; *Whittemore* v. *Gibbs,* 24 N. H. 484, 488, 489. It is also true that, in connection with this rule, it has often been stated that a tenancy at will cannot be sublet, but actual authority in the decided cases for the latter assertion is lacking unless a subletting is regarded as the equivalent of an assignment or a transfer. In the note above referred to it is said: "A tenancy at will, being determinable at any time, cannot be assigned or sublet by the tenant to another" (23 A. L. R. 145), and cases from twelve jurisdictions are cited in support of this statement. In some of them the rule is only stated *arguendo;* in many of them no mention of subletting is to be found; and all in which the rule is the basis of decision are cases in which the tenant at will had undertaken to transfer all his rights or in which his rights had been terminated before the owner took action against the sublessee. The citations follow. *Hunnicutt* v. *Head,* 179 Ala. 567; *McLeran* v. *Benton,* 73 Cal. 329; *Packard* v. *Railroad,* 46 Ill. App. 244; *Jackson* v. *Hughes,* 1 Blackf. 421; *Cunningham* v. *Holton,* 55 Me. 33; *Cooper* v. *Adams,* 6 Cush. 87; *King* v. *Lawson,* 98 Mass. 309; *Holbrook* v. *Young,* 108 Mass. 83; *Howland* v. *White,* 48 Ill. App. 236; *Meier* v. *Thiemann,* 15 Mo. App. 307; *Reid* v. *Gees,* 277 Mo. 556; *Whittemore* v. *Gibbs,* 24 N. H. 484; *Austin* v. *Thomson,* 45 N. H. 113; *Reckhow* v. *Schanck,* 43 N. Y. 448; *Say* v. *Stoddard,* 27 Ohio St. 478; *Doak* v. *Donelson's Lessee,* 2 Yerg. 249; *Pinhorn* v. *Souster,* 8 Exch. 763.

Of course, a landlord, by terminating the tenancy at will, may incidentally destroy the rights of the undertenant. Such was the situation in *Clark* v. *Wheelock,* 99 Mass. 14, upon which the plaintiff strongly relies, and the court there apparently regarded it as necessary that the tenancy be terminated before the undertenancy could be affected, for the notice to quit given by the landlord to the undertenant was held to be sufficient only because it was decided that it

bound the tenant also. The court there said (*p.* 15) "Kern [the tenant at will], having surrendered the occupation to Wheelock, notice to the latter would affect both him and Kern." No case like the present has been cited and none has been found in which the landlord has sought to oust an undertenant of a portion of the premises while permitting the tenant at will to remain in possession of the rest. We are called upon to consider whether he has a legal right to do so.

A great deal of unguarded language has been used by courts and text writers in regard to tenancies at will. One extreme example will suffice for our purposes. In *Doak* v. *Donelson*, (1829) 2 Yerger 249, the Tennessee court said that a tenant at will "had no estate in the land, and could not transfer his possession to another, because he could make no lawful contract in reference to it; the very nature of his occupancy precluded all idea of dealing with it as an interest in the land, or of a sub-tenancy under him." The statement that a tenant at will has no estate in the land is inconsistent with the generally accepted view that the right of a tenant at will is a "leasehold" (35 C. J. Tit., Landlord and Tenant, 1120), and is directly contrary to the following declaration of this court in *Voudomas* v. *Bragg, supra:* "Since the association occupied the land with the express permission of the owner, it became at the very least a tenant at will. *Dame* v. *Dame*, 38 N. H. 429, 434; P. L., c. 213, s. 15. The association had therefore an 'estate'. 2 Bl. Com. 145; 1 Tiff., L. and T. 118." The statements that a tenant at will can "make no lawful contract in reference to" his possession of the premises and that "the very nature of his occupancy" precludes all idea "of a sub-tenancy under him," are also directly contrary to the declaration of this court in *Voudomas* v. *Bragg, supra*, which is amply sustained by the authorities cited in its support, that "any lease which he [a tenant at will] undertakes to make 'will be good between him and his lessee so long as he is suffered to enjoy the premises,' 1 Washb., Real Prop. (6th *ed.*) s. 765; *Holbrook* v. *Young*, 108 Mass. 83, 85; *Meier* v. *Thiemann*, 15 Mo. App. 307." The possibility that a tenant at will may create an under-tenancy valid between the parties is also distinctly recognized in *Austin* v. *Thomson*, 45 N. H. 113, 120. It is difficult to see how a tenancy at will as defined by the Tennessee court could be distinguished from one at sufferance.

It is, therefore, plain that the inability of a tenant at will to assign or transfer his rights does not arise because he has no estate in the premises, or "because of any inherent incapacity in the tenant to assign" his rights (*Voudomas* v. *Bragg, supra*) or contract with ref-

erence to his possession. The true reason is found in the nature of his estate. "A tenancy at will is an estate which simply confers a right to the possession of the premises leased for such indefinite period as both parties shall determine such possession shall continue." *Cunningham* v. *Holton*, 55 Me. 33, 36. The reason why this kind of an estate cannot be assigned was thus stated by Lord Coke. "If tenant at will granteth over his estate to another, and the grantee entreth, he is a disseizor, and the lessor may have an action of trespasse against the grantee; for albeit the grant was void, yet it amounteth to a determination of his will." Co., Lit. 57, quoted in *Cooper* v. *Adams*, 6 Cush. 87, 91. The same idea was thus expressed in *Reckhow* v. *Schanck*, 43 N. Y. 448, 450. "A tenant at will is disqualified from granting a lease available against any one but himself; for the demise would amount to a termination of the will, and it would be optional with the landlord to regard the entry of the lessee of the tenant at will as a disseizin." As stated by a modern text writer, "The relation of landlord and tenant does not pass to the assignee of the tenant where the tenancy is terminated by the very act of transmission of the possession by the tenant." 1 Washb., Real Prop. (6th *ed.*) s. 765.

It seems clear that these reasons furnish no justification for an extension of the rule against assignments so as to preclude the subletting of a portion of the premises. Obviously no conclusion that the tenant has expressed his will to terminate the tenancy can be drawn from the fact that he sublets a portion of the property. On the contrary, such conduct clearly evidences his intent to maintain the tenancy and enjoy its benefits. These considerations are particularly applicable to the present case where the leased building is a business block containing several stores. It must certainly have been the understanding of the parties that the tenant of the building would sublet the stores in accordance with the purpose for which it was designed. The practice in years past has been in accordance with this understanding. It would be a strange perversion of the undoubted facts to treat the letting of these stores by the tenant as a surrender of his leasehold *pro tanto* if this were otherwise possible. Yet it is only upon some such theory that the plaintiff can succeed in this case.

The fact of the matter is that the plaintiff is not seeking to gain possession of the premises at all, but rather to put Young in possession of them. It is lending its aid to him in order to help him escape his legal obligations which have twice been vindicated in this court. It seeks

to strike at the defendant without disturbing Young's tenancy. This cannot be done. Justice is not so blind as to permit the plaintiff to expel the defendant upon the ground that Young's tenancy was theoretically terminated by the subletting, while treating it for all other purposes as a valid and subsisting arrangement. So long as Young's right of occupancy continues, the plaintiff's right to possession of the stores under him persists. The peculiar conditions of ownership here disclosed lend unusual force to this conclusion.

It appears that there is a separation between the ownership of the building and the land upon which it stands. The plaintiff owns the land, but Young owns the building with a right to dispose of it as he sees fit. Consequently, the building is personal property. *Laird* v. *Railroad*, 62 N. H. 254. It does not appear that the plaintiff has or ever will have any right to the possession of it. The defendant claims the right to occupy a portion of this chattel. The plaintiff could not have created this right, and cannot destroy it so long as its present arrangement with Young continues in force.

Legally the plaintiff and the defendant are strangers. The relation of landlord and tenant does not exist between them. *Austin* v. *Thomson, supra.* The defendant is rightfully in possession under Young and cannot be regarded as a trespasser or disseizor. Until Young's tenancy is ended, the plaintiff can make no enforceable demand against the defendant.

In the light of the foregoing discussion, it is plain that the principle stated in *Voudomas* v. *Bragg*, and quoted above, should be expanded in accordance with the true intent of the court to read as follows: No tenant at will can create any estate in another which will avail against the owner of the land after the rights of the tenant at will have been terminated.

*Judgments for the defendant.*

Snow, J., did not sit: the others concurred.