Rockingham, June 6, 1944. } No. 3480.

BEATRICE M. STANDISH *v.* ELIZABETH MOLDAWAN.

*William H. Sleeper,* for the plaintiff.

*George R. Scammon,* for the defendant.

MARBLE, C. J. The defendant in her brief concedes that she has no statutory lien on the property in question but declares that, in seizing and holding the furniture, she was merely asserting her common-law right of distraint for rent in arrears. No such specific claim appears to have been made in the Superior Court, however. But inasmuch as the defendant could still be allowed to file a special plea setting forth this defense if justice so required, the contention now advanced has been considered.

Distress for rent is a proceeding *in rem* whereby the landlord seizes property found on the demised premises and holds it until the

tenant redeems by payment of the rent due. At common law the remedy was said to be incident only to rent service, but the statute (4 Geo. II, c. 28) made it generally applicable to rent in arrears. By statute also (2 Wm. & M., sess. 1, c. 5, s. 2) a power of sale was given to the distrainor. McAdam, L. & T., s. 462.

The defendant maintains that this primitive remedy is available to present-day landlords for the reason that section 26 of chapter 413 of the Revised Laws, entitled "Actions against Tenants," provides that nothing therein contained shall be construed to prevent a landlord from pursuing his legal remedy at common law. But since the legal remedies afforded by chapter 413 deal solely with the enforcement of possessory rights, it is reasonable to infer that section 26 has reference to common-law remedies for that purpose and not to remedies for the collection of rent.

Moreover, it is doubtful if distress for rent was ever a part of our common law. The law relating to pounds and the distraining of animals was statutory. 5 N. H. Laws, 629; 6 N. H. Laws, 458; R. S., c. 137; Brown v. Smith, 1 N. H. 36; Osgood v. Green, 33 N. H. 318, 323, 324. It is true that distress for rent is mentioned in a few early cases (Adams v. French, 2 N. H. 387, 388; Bell v. Bartlett, 7 N. H. 178, 183, 185; Great Falls Co. v. Worcester, 15 N. H. 412, 435; Osgood v. Green, 30 N. H. 210, 215, 216), but no recorded instance of its actual application has been called to our attention, and its adaptability "to the situation and circumstances of this state" at any given period is highly questionable. See Pettingill v. Rideout, 6 N. H. 454, 455; Lisbon v. Lyman, 49 N. H. 553, 582, and cases cited; Const., Pt. II, art. 90.

The fact, however, that it may have been adapted to circumstances existing when the Constitution was adopted does not necessarily mean that it still endures. If there was ever a time when the public interest required its existence, that time has long since passed. This being so, the rule that no law should survive the reasons on which it is founded is particularly applicable. Cole v. Company, 54 N. H. 242, 285; Heath v. Heath, 85 N. H. 419, 422.

Current public opinion concerning a debtor's rights finds expression in chapter 388 of the Revised Laws pertaining to attachments. Section 2, paragraph III, of that chapter provides that the debtor's household furniture to the value of one hundred dollars (increased from twenty dollars in 1871) shall be exempt from attachment and execution. See R. S., c. 184, s. 2, par. III; Laws 1871, c. 30, s. 1. There is no lack of authority to the effect that in the New England

states the right of attachment on mesne process has quite generally superseded that of distress. Jones, L. & T., *s.* 650; Taylor, L. & T. (9th *ed.*), *s.* 558; Tiffany, L. & T., *s.* 325; Kent's Commentaries (14th *ed.*), *p.* 746. See, also, *Potter* v. *Hall*, 3 Pick. 368.

*Judgment for the plaintiff.*

All concurred.