Rockingham
No. 82-243

IRWIN COOPERMAN,
AS TRUSTEE OF EXETER–LAFAYETTE TRUST

v.

GERALD C. MACNEIL d/b/a GRANITE STATE DEVELOPERS & a.

August 31, 1983

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Susan M. Vercillo* on the brief), by brief for the plaintiff.

*Sullivan, Gregg & Horton P.A.*, of Nashua (*Sherman D. Horton, Jr.*, on the brief), by brief for the defendant Gerald C. MacNeil d/b/a Granite State Developers.

BOIS, J. The central question presented by this appeal is whether the superior court had jurisdiction to grant possessory relief to a lessor, the Exeter-Lafayette Trust, where the lessee, Gerald C. MacNeil, failed to make certain rent payments required by the terms of the parties' lease.

In November 1981, the plaintiff lessor brought an action in superior court against the defendant lessee and its sublessee, the defendant Pizza Hut of America, Inc., by writ containing three counts. Two of the counts were possessory in nature; the first was a plea of ejectment, and the second was a plea of entry. In addition to seeking possessory relief, both of these counts sought damages of $100,000. The third count was a plea of the case for the recovery of rent alleged to be due. The plaintiff filed a motion for summary judgment, and a hearing was held before a Master (*Mayland H. Morse, Jr.*, Esq.), who recommended that the motion be granted. The Trial Court (*Contas*, J.) approved the master's recommendation, awarding a judgment against the defendant MacNeil as to the amount of percentage rent due ($20,350.13) and ordering possession for the plaintiff as against both defendants and the mortgagee intervenor, Merchants Savings Bank. We affirm.

In 1972, MacNeil sought to develop a "Pizza Hut" restaurant site and, in December 1972, he leased about one-half acre of land in Portsmouth from the plaintiff. He borrowed funds for construction from the Merchants Savings Bank and erected a building on the land. The original "prime lease," which the plaintiff and MacNeil entered into on December 31, 1972, provided for a base annual rent of $10,000 plus "a sum equal to the amount, if any, by which the fixed rent payable . . . shall be less than six percent (6%) of the gross sales . . ." (hereinafter referred to as percentage rent). The lease contained a requirement that the tenant submit to the landlord annual statements of gross sales, upon which the percentage rent was to be computed. It further provided that "[t]he receipt . . . of any statement or any payment of percentage rent for any period, or the failure . . . to make an inspection or audit . . . shall not bind Landlord as to the correctness of the statement or the payment, nor bar Landlord from collecting at any time thereafter the percentage rent due for said period."

By lease dated November 1, 1972, and ratified January 1, 1973, MacNeil sublet the premises to the defendant Pizza Hut of America, Inc., for a fixed rent of $1,400 per month. This lease contained no reference to the percentage rent provision discussed above. The master found that, according to the terms of a so-called "five-party" agreement dated March 7, 1973, all the parties before the court expressly recognized that the sublease was subject to the provisions of the prime lease and did not modify or waive any of those provisions. For the first five years of the lease, Pizza Hut's gross sales were not great enough to trigger the percentage rent provision. The provision, however, became applicable in April 1978 and continued to be applicable in subsequent years. In early 1981, the plaintiff dis-

covered that the required percentage rent payments had not been made for the lease years 1978 through 1981, and that approximately $20,000 plus interest was due and owing.

On April 14, 1981, the plaintiff served MacNeil with a notice of default under the terms of the lease because of the failure to pay the percentage rent. A copy of this letter was sent to Pizza Hut. After receiving MacNeil's May rental payment, which did not include any amount for percentage rent, the plaintiff notified him in writing on May 6, 1981, that it was accepting the proffered minimum rent for May without waiving the April 14, 1981, default notice. The plaintiff also indicated in the May 6, 1981, letter that it reserved all rights resulting from MacNeil's continued failure to pay the percentage rent. Copies of this letter were also sent to Pizza Hut and MacNeil's attorney.

On June 21, 1981, in accordance with the "five-party" agreement, a copy of the default notice was sent to the mortgagee bank and to MacNeil's counsel. On June 29, 1981, after all parties had notice of the failure to pay the percentage rent, MacNeil and Pizza Hut agreed to amend the sublease but failed to resolve or even address the rent problem.

In July 1981, the plaintiff informed MacNeil's attorney that it would take no action to terminate the lease if all the percentage rent then due were paid by September 1, 1981. On September 10, 1981, when no percentage rent payments were forthcoming, the plaintiff sent a letter to MacNeil notifying him that, pursuant to the terms of the leasehold agreement, the lease was terminated effective September 15, 1981. A copy of this notice was mailed to Pizza Hut, the intervenor Merchants Savings Bank, and MacNeil's attorney. The default not having then been cured by any of the interested parties, the plaintiff commenced this action in the superior court in November 1981.

Following a hearing on the plaintiff's motion for summary judgment, the master found and ruled as follows:

> "The terms of the leases were not specified as to any language which gives rise to claims of ambiguity. The leases stand as integrated written documents from which the relationship of the parties and the respective rights and duties of the parties in this case are governed. As such, the issues become matters of law for interpretation and do not give rise to any issues of material fact. No issues of material fact have been actually set forth in any of the counter affidavits attached to the objections to the motion for summary judgment to satisfy the requirements of RSA 491:8(a)."

700

In this appeal, MacNeil challenges, for the first time, the superior court's jurisdiction to grant possessory relief. He does not dispute that all three actions brought by the plaintiff in this case satisfied the general prerequisites for superior court jurisdiction under RSA 491:7 (Supp. 1979). He argues, however, that RSA 540:13 vests in the district and municipal courts exclusive jurisdiction to grant possessory relief, and that RSA chapter 540 further prescribes the procedures which must be followed for judicial intervention in landlord-tenant relationships.

 We would not ordinarily consider a question presented for the first time on appeal, *Dubois v. Dubois*, 122 N.H. 532, 536, 446 A.2d 1181, 1183 (1982); *Carbur's, Inc. v. A & S Office Concepts, Inc.*, 122 N.H. 421, 423, 445 A.2d 1109, 1111 (1982), but we have recognized certain limited exceptions to the general rule that requires a party to raise an issue before the trial court in order to preserve the question for our review. *Rodrigue v. LaFlamme*, 122 N.H. 966, 969–70, 453 A.2d 1254, 1256–57 (1982). Subject matter jurisdiction is such an exception. Where exclusive jurisdiction is expressly conferred upon a court, no other tribunal may exercise such jurisdiction. Waiver cannot confer subject matter jurisdiction where it does not exist, and any action taken by a court without jurisdiction is void and may be challenged at any stage of the proceedings. *Klein v. Bronstein*, 91 N.H. 42, 43, 13 A.2d 149, 149 (1940).

In light of these principles, we will now consider MacNeil's claim that the superior court lacked jurisdiction to grant possessory relief. Our research reveals that at common-law ejectment and entry were highly technical possessory actions which could be brought in superior court. *See Lavoie v. Szumiez*, 115 N.H. 266, 267, 339 A.2d 28, 29 (1975); 25 AM. JUR. 2d *Ejectment* §§ 1–3 (1966); *see also Public Service Co. v. Voudomas*, 84 N.H. 387, 387, 151 A. 81, 82 (1930) (writ of entry instituted in superior court); *Buber v. Blais*, 79 N.H. 516, 516–17, 112 A. 396, 396 (1920) (writ of entry brought in superior court). In order to simplify and facilitate the landlord's recovery of possession of his premises, the legislature, in 1842, enacted chapter 209 of the Revised Statutes, the predecessor to RSA chapter 540, authorizing summary possessory actions in municipal or district courts. *Lavoie v. Szumiez*, 115 N.H. at 267, 339 A.2d at 29; *see* R.S. 209:10, :11 (1843).

 Contrary to MacNeil's argument, we are convinced that the statutory scheme did not displace the common-law actions of ejectment and entry. We have frequently stated that we will not construe a statute as abrogating the common law unless the statute clearly expresses such an intention. *See Wisniewski v. Gemmill*, 123

N.H. 701, 705–06, 465 A.2d 875, 878 (1983); *Bolduc v. Herbert Schneider Corp.*, 117 N.H. 566, 568, 374 A.2d 1187, 1188–89 (1977). Here, the statute expressly states that: "Nothing in this chapter shall be construed to prevent a landlord from pursuing his legal remedy at common law." RSA 540:26. Thus, it plainly expresses an intention to retain the common-law remedies such as ejectment and entry. Additionally, this court has acknowledged the coexistence of two actions to recover possession of the same premises, one brought in municipal court under the landlord-tenant statute and the other instituted in superior court by a writ of entry. *See Public Service Co. v. Voudomas*, 84 N.H. at 387, 151 A. at 82. As a result, in New Hampshire, the old common-law actions of ejectment and entry have been retained and exist side by side with the statutory remedy, at the election of the suitor.

■■ We hold that the jurisdictional and procedural requirements of RSA chapter 540 do not apply to the common-law actions at bar, and that the superior court therefore had jurisdiction over the plaintiff's pleas of ejectment and entry. We dispose of MacNeil's claim that the granting of summary judgment was unconscionable simply by noting that these were actions at law, not in equity, and, as the trial court properly concluded, summary judgment was required because no triable issue of fact existed. *See* RSA 491:8-a, III (Supp. 1981).

*Affirmed.*

All concurred.