Belknap
No. 2005-865

JAMES M. GREELISH

v.

DIANE WOOD

Argued: September 7, 2006
Opinion Issued: December 7, 2006

*John F. Lake*, of Barnstead, by brief and orally, for the plaintiff.

*Donald F. Whittum*, of Rochester, by memorandum of law and orally, for the defendant.

HICKS, J. The plaintiff, James M. Greelish, appeals an order of the Superior Court (*Perkins*, J.) awarding damages arising out of the defendant's occupancy of a home purchased by the plaintiff at a foreclosure sale. We affirm in part, vacate in part, and remand.

The defendant, Diane Wood, possessed a life estate in a residence located in Center Barnstead. The property was sold to the plaintiff at a foreclosure sale, however, which terminated the life estate. On July 7, 2003, the plaintiff served the defendant with a notice to quit and a notice to leave the premises and not re-enter. When the defendant failed to vacate the premises, the plaintiff filed a landlord-tenant writ in Laconia District

Court, which the defendant removed to superior court. On or about January 1, 2004, the defendant vacated the premises. This resolved the issue of possession, but the action continued—the plaintiff sought damages for his inability to rent the property during the time that the defendant had refused to vacate, while the defendant sought damages for harassment she allegedly suffered before she vacated and for the value of personal property she alleged was missing when she attempted to retrieve it on January 10, 2004.

In May 2004, the trial court ruled that after the foreclosure, the defendant became a tenant at sufferance. The court found that the plaintiff had engaged in a course of conduct designed to force the defendant to leave, including parking a truck across the driveway to block access to the premises, parking a vehicle within inches of the steps leading to the porch also to block access, and removing without permission an unregistered vehicle that the defendant was storing on the property.

The court further found that when the defendant left the premises on or about January 1, 2004, she was unable to remove certain personal property stored in the basement. When she returned on January 10 to retrieve it, property worth $1,030 was missing. The court noted that the plaintiff did not deny at trial that he had removed those items.

The case was appealed to this court, resulting in a remand for further proceedings. On remand, the trial court found that the plaintiff had procured a prospective tenant who was willing to take possession of the premises on August 18, 2003, and pay $1,100 per month in rent. The plaintiff was unable to rent the property to the prospective tenant, however, because the defendant did not vacate until January 1, 2004. The trial court awarded the plaintiff damages equal to $1,100 per month from August 18 through January 1, 2004, totaling $4,876.71.

With respect to the defendant's claims for damages, the trial court found that the plaintiff's "harassing conduct was unreasonable, excessive and effectively constituted an attempted self-help constructive eviction." The court awarded the defendant damages equal to the fair rental value of the premises from the beginning of the harassment (August 4, 2003) until she vacated on January 1, 2004, totaling $5,390.09. In addition, the court found that the plaintiff had removed the defendant's personal property and had not returned it. Therefore, the court awarded an additional $1,030 to the defendant. After the damage awards were offset against each other, the final judgment was $1,543.38 to the defendant.

The plaintiff appeals, arguing that the trial court erred: (1) in calculating his damages resulting from the defendant's failure to vacate the premises; and (2) in awarding damages to the defendant because the only duty he owed her was to refrain from inflicting willful or wanton injury.

We have not been provided with transcripts of the proceedings in the trial court. Accordingly, we assume that the evidence was sufficient to support the trial court's findings, and we review the trial court's decision for errors of law only. *See Atwood v. Owens*, 142 N.H. 396, 396-97 (1997).

The trial court's order states that the plaintiff requested damages from July 11, 2003, through January 1, 2004, at a rate of $1,100 per month, due to the defendant's failure to timely vacate the premises. The trial court refused to award damages for the period prior to August 18, 2003, however, as that was the date upon which the prospective tenant would have taken possession had the defendant timely vacated. The court concluded that the defendant's occupancy prior to August 18 did not cause any damage to the plaintiff, presumably because the plaintiff presented no evidence that he had found a tenant who was willing to take possession prior to August 18.

■ The plaintiff argues that he is entitled to damages for the defendant's occupation of the premises prior to August 18 despite his failure to prove that he had procured a tenant who was willing to take possession prior to that date. We agree. In the absence of proof of special damages, the general rule is that the proper measure of recovery "against a tenant for the failure to surrender the premises is the reasonable rental value for the time possession is withheld." 49 AM. JUR. 2D *Landlord and Tenant* § 278 (2006). This is consistent with the view of the RESTATEMENT (SECOND) OF PROPERTY, which states that a landlord is entitled to recover from a tenant who improperly holds over after the termination of a lease "for the use and occupation of the leased property during the holdover period at a rate based on the previous rental rate, or on the proven reasonable value independently established if that differs from the previous rental rate." RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT § 14.5 (1977). As the Reporter's Note explains, this rule "simply requires the tenant to pay for what he got during the holdover period." *Id.* at 34 Reporter's Note 2.

■ We see no reason why a similar rule should not apply to the defendant, who was a tenant at sufferance. Thus, we conclude that the defendant is liable for the reasonable value of the premises for the time possession was withheld, including such time prior to August 18. On appeal, neither party contests the trial court's determination that $1,100 per month is the rate for the calculation of the plaintiff's damages. Accordingly, we vacate the award of damages to the plaintiff and remand for recalculation based upon the rate of $1,100 per month in accordance with this opinion.

The plaintiff next challenges the damages awarded to the defendant. Because the defendant was a tenant at sufferance, the plaintiff argues that the only duty he owed her was to refrain "from doing her willful or wanton injury." He contends that his actions were permissible under the common law, and continue to be so in light of RSA 540:26 (1997). In essence, he argues that he was entitled to use self-help in an attempt to gain possession of the premises.

In *Hill v. Dobrowolski*, 125 N.H. 572 (1984), we addressed a similar issue with respect to tenancies at sufferance that result from holding over after the expiration of a lease or rental agreement. We concluded that the enactment of RSA chapter 540-A "removed the landlord's common law right to self-help in evicting a residential tenant whose tenancy at sufferance was preceded by a different leasehold tenancy." *Hill*, 125 N.H. at 575. We stated, however, that the relevant prohibitions in RSA chapter 540-A do not apply to every tenancy at sufferance—in particular, they do not apply in "cases of a tenancy at sufferance arising outside of the rental or leasehold context." *Id.* at 576. Because we concluded that RSA chapter 540-A removed the landlord's common law right to self-help for tenancies at sufferance like the one at issue in *Hill*, we had no need to consider whether the common law right to self-help otherwise continues to co-exist with RSA chapter 540, which provides for summary possession actions. Because the tenancy at sufferance in the instant case arose outside of the rental or leasehold context and thus the provisions of RSA chapter 540-A do not apply, we must now address that issue.

At common law, no action for trespass to land or goods would lie against a landlord who entered and removed goods of a tenant whose prior tenancy had been converted to a tenancy at sufferance, where the goods were removed to a convenient distance, without breach of the peace, doing them no unnecessary damage. *Weeks v. Sly*, 61 N.H. 89, 90 (1881). Furthermore, we once noted that under the "strongly preponderating opinion of the American courts, . . . no civil action lies against a landlord for regaining with force the possession of the demised premises, unless there is an excess of force, and then only for such excess." *Sterling v. Warden*, 51 N.H. 217, 232 (1871). No party has cited any authority, and we are aware of none, that gave greater rights under the common law to a tenant at sufferance who did not have a prior rental or lease agreement. Thus it appears that under the common law, self-help was once available in circumstances such as are presented here. The question is whether that common law remedy continues to exist.

We considered an analogous issue in *Standish v. Moldawan*, 93 N.H. 204 (1944). In that case, a landlord detained a tenant's furniture because the tenant owed rent. The landlord argued that in seizing and holding the

furniture, she was asserting her common-law right of distraint for rent in arrears. While doubting that distress for rent was ever a part of our common law, we stated:

> The fact, however, that it may have been adapted to circumstances existing when the Constitution was adopted does not necessarily mean that it still endures. If there was ever a time when the public interest required its existence, that time has long since passed. This being so, the rule that no law should survive the reasons on which it is founded is particularly applicable.

*Standish*, 93 N.H. at 205. We noted that "[c]urrent public opinion" concerning debtor's rights could be found in statutes providing exemptions from attachment for household furniture, and concluded that distraint was not an available remedy. *Id.* at 205-06.

In determining whether the time when the public interest requires the existence of a self-help remedy for cases such as the one before us has passed, we begin by noting that the legislature has provided a statutory remedy. In order to simplify and facilitate the owner's recovery of possession, summary possessory actions were authorized beginning with RS chapter 209 (1843), the predecessor to current RSA chapter 540. These statutes established rights and benefits which a landlord did not enjoy at common law. *Lavoie v. Szumiez*, 115 N.H. 266, 267 (1975). The statutory process was intended to be summary and was designed to provide an expeditious remedy to a landlord seeking possession. *Matte v. Shippee Auto*, 152 N.H. 216, 218 (2005).

The statutory summary process provides an alternative to the use of self-help. Indeed, the RESTATEMENT (SECOND) OF PROPERTY contends that a statutory summary process should substitute for the right of self-help, absent clear legislative intent to the contrary, with respect to tenancies at sufferance that result from holding over after the expiration of a lease or rental agreement:

> If the controlling law gives the landlord ... a speedy judicial remedy for the recovery of possession of leased property from a tenant improperly holding over after the termination of the lease, ... the landlord ... [may not] resort to self-help to recover possession of the leased property from such tenant, unless the controlling law preserves the right of self-help.

RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT, *supra* § 14.2 (1); *see* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT, *supra* § 14.2 comment *a* at 11.

We have recognized that while the remedy by summary process may not be as speedy as self-help, "it is the one that the Legislature has deemed generally satisfactory to settle disputes between landlord and tenant." *Exeter Realty Co. v. Buck*, 104 N.H. 199, 201 (1962). Furthermore, other judicial remedies may be available in appropriate cases—despite the existence of the statutory summary process, a superior court may still use its equity jurisdiction to preserve the status quo, prevent a breach of the peace, or prevent irreparable injury to any litigant. *Id.* at 202.

The modern trend has been to recognize that the existence of a speedy judicial remedy makes a right of self-help unnecessary.

> Most common ... is the modern rule that a landlord entitled to possession must resort to the remedy that the law provides to secure the leased premises when the tenant refuses to surrender them. ... If the controlling law gives the landlord or an incoming tenant a speedy judicial remedy for the recovery of possession of leased property from a tenant improperly holding over after the termination of the lease, neither the landlord nor the incoming tenant may resort to self-help to recover possession of the leased property from the tenant, unless the controlling law also preserves the right of self-help.

49 Am. Jur. 2d *Landlord and Tenant* § 829 (2006) (footnotes omitted); *see* Annotation, *Tenant—Dispossession Without Process*, 6 A.L.R.3D 177, 186 (1966). The modern trend is "founded on the recognition that the potential for violent breach of the peace inheres in any situation where a landlord attempts by his own means to remove a tenant who is claiming possession adversely to the landlord." *Berg v. Wiley*, 264 N.W.2d 145, 151 (Minn. 1978). It furthers important public policies by preventing landlords from taking the law into their own hands, thereby improving the prospects for preserving the public peace. *See* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT, *supra* § 14.2 comment *a* at 11.

For similar reasons, other changes have been made to the common law. For example, in noting that the legislature has abolished the common law right to resist an unlawful arrest, we stated:

> A society which seemingly becomes more complex with each passing day is enlightened when its laws reflect a high purpose to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather than by physical confrontation on the street or in the gutter.

*State v. Haas*, 134 N.H. 480, 484 (1991). Similar considerations likely motivated the legislature to prohibit the use of self-help to regain possession of premises under most circumstances by enacting RSA 540-A:2 and :3. We are hard-pressed to see why these same considerations should not lead us to conclude that the modern rule should apply with respect to tenancies at sufferance such as the one in this case.

█ It is clear that the statutory summary process in RSA chapter 540 was available to the plaintiff. RSA 540:12 (1997) provides in part that the purchaser at a mortgage foreclosure sale may recover possession thereof from a person in possession, holding it without right, after notice in writing to quit as prescribed in RSA chapter 540. *See also* RSA 540:2, I (Supp. 2006) (owner may terminate "any tenancy" by giving occupant notice to quit); *AIMCO Props. v. Dziewisz*, 152 N.H. 587, 589 (2005) ("any tenancy" includes tenancies at sufferance). Indeed, the plaintiff initiated this action by filing a landlord-tenant writ under RSA chapter 540. Given the availability of that process and in light of the policy reasons discussed above, we conclude that the time when the public interest required the existence of self-help for a purchaser at a foreclosure sale to recover possession from a tenant at sufferance has passed. *Cf. Standish*, 93 N.H. at 205.

█ The plaintiff relies upon RSA 540:26, which provides that "[n]othing in this chapter shall be construed to prevent a landlord from pursuing his legal remedy at common law," to argue that the common-law remedy of self-help has been preserved by controlling law. The term "legal remedy," however, is ambiguous. It can be broadly construed to refer to any right established by law that corrects or counteracts an evil; that is, any remedy permitted under the common law including the remedy of self-help. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1290, 1920 (unabridged ed. 2002). Alternatively, it can be more narrowly construed as a term of art, referring to a remedy historically available in a court of law. BLACK'S LAW DICTIONARY 1320 (8th ed. 1999). The narrow construction would obviously exclude self-help, which is an extrajudicial remedy. *See id.* at 1391.

In construing this ambiguous phrase, we are assisted by RSA 21:2 (2000), which provides:

> Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such peculiar and appropriate meaning.

"Legal remedy" has acquired a peculiar and appropriate meaning in law, and we therefore construe it accordingly. Our adoption of the narrow construction is consistent with *Cooperman v. MacNeil*, 123 N.H. 696, 700-01 (1983), where we stated that RSA 540:26 plainly expresses an intent to retain the common-law possessory actions of ejectment and entry, which could be brought in superior court. We hasten to note that if the legislature disagrees with the result we reach today, it is of course free to amend the statutes accordingly.

■ We now turn to the damages awarded to the defendant. The plaintiff's sole arguments with respect to these damages are that his duty to the defendant was limited to refraining from doing her willful or wanton injury, and that his actions were permissible at common law. He does not otherwise challenge the amount of the damages awarded. Having concluded that the common-law remedy of self-help was not available to the plaintiff, we have no difficulty rejecting the arguments made by him.

In summary, we affirm the damage awards of $5,390.09 and $1,030 to the defendant. We vacate the damage award of $4,876.71 to the plaintiff, and remand for recalculation of that award at the rate of $1,100 per month in accordance with this opinion.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.