Anthony CHIBS, Appellant,

v.

Arnata FISHER, Appellee,

and

District of Columbia Housing
Authority, Intervenor.

No. 04–CV–1559.

District of Columbia Court of Appeals.

Submitted May 28, 2008.
Decided June 2, 2008.[1]

Bernard A. Gray, Sr., Washington, DC,
was on the brief for appellant.

Ann Marie Hay, Supervising Attorney at
the time the brief was submitted, D.C.
Law Students in Court Program, with
whom Stacy Raphael Stewart, Student At-
torney (No. 11167), was on the brief for
appellee.

1. The decision in this case was originally is-
sued as a Memorandum Opinion and Judg-
ment on June 2, 2008, and is now being
published at the request of the Appellee.

Frederick A. Douglas, Washington, DC, filed a statement in lieu of brief for the intervenor.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and PRYOR, Senior Judge.

WASHINGTON, Chief Judge:

Anthony Chibs appeals from the trial court's dismissal of his claim for repossession of his rental property and its grant of a total rent abatement to his tenant, Arnata Fisher, and the District of Columbia Housing Authority. Chibs asserts that the evidence failed to support a total abatement and that the court improperly required him to prove the reasonable "as is" value of the property. Finding no error, we affirm.

## I.

■ District of Columbia residential leases contain implied warranties of habitability, which require landlords to maintain rental property in compliance with the District's housing regulations. *See* 14 DCMR § 302 (1991); *Anderson v. District of Columbia Hous. Auth.*, 923 A.2d 853, 858 (D.C.2007). These regulations provide that a lease shall be void if a landlord fails to timely correct known housing code violations (not intentionally caused by tenants) that render housing unsafe or unsanitary. 14 DCMR § 302.2. Tenants may therefore avoid repossession for nonpayment of rent by proving a breach of the implied warranty through evidence establishing housing code violations. At trial, the court must therefore determine whether violations existed during the relevant time period and what portion of rent, if any, a tenant must pay. *See Javins v. First Nat'l Realty Corp.*, 138 U.S.App.D.C. 369, 380–81, 428 F.2d 1071, 1082–83 (1970).

The factfinder may award anything from no abatement to a total abatement. *See id.* On appeal from a bench trial, we review the trial court's legal conclusions *de novo*, but defer to its factual findings if they are supported by the record. *See* D.C.Code § 17–305 (2001).

■ While not directly contesting the trial court's finding of housing code violations or even of an implied warranty breach, Chibs argues that the evidence did not support a total abatement. We disagree. Credible evidence of housing code violations alone can support a finding that the housing had no reasonable rental value. *See Bernstein v. Fernandez*, 649 A.2d 1064, 1072 (D.C.1991) (holding that evidence of persistent and extreme problems with decaying ceilings and rodent infestation sufficed to allow the jury to find an "as is" value of zero). Neither expert testimony nor other evidence of market value is necessary. *See id.*

Here, the record—including Fisher's testimony, pictures, the testimony of a District law student, and an April 2003 DCHA inspection report—is replete with evidence of dangerous and deplorable housing conditions: electrical deficiencies, ineffective heating, rotting structures, basement flooding, and rodent infestation. According to the testimony, these conditions, which began almost immediately after Fisher moved in, rendered her home unsafe, unsanitary, and in some rooms, uninhabitable. Though Fisher repeatedly informed Chibs of problems, he neglected to address them. This evidence adequately supported the trial court's findings that several housing code violations existed shortly after Fisher moved into the house; that the problems created unsafe and unsanitary housing; that Fisher notified Chibs about these problems; and that

Chibs ignored them.[2] The evidence thus proves a breach of implied warranty. *See* 14 DCMR § 302.2. And it also supports the trial court's award of a total rent abatement. *See Bernstein, supra,* 649 A.2d at 1072; *Javins, supra,* 138 U.S.App. D.C. at 381, 428 F.2d at 1083.

◼ Chibs next argues that the trial court erred by requiring him to prove the value of his rental property. In *Davis v. Slade,* we held that despite a void lease, a landlord may recover the reasonable value of the premises under a quasi-contractual theory. *See* 271 A.2d 412, 416 (D.C.1970). For this proposition, *Davis* cites to *Javins, supra.* As noted above, the court in *Javins* required the factfinder to determine (1) if housing code violations existed, and (2) how much rent, if any, a tenant still owed the landlord despite the violations. *See* 138 U.S.App.D.C. at 381, 428 F.2d at 1083. And it noted that the factfinder could award no abatement, a total abatement, or a partial abatement. *See id.* Here, citing *Davis,* the trial court purported to shift the burden to Chibs to prove the reasonable rental value once Fisher had proven the implied warranty breach. Although *Davis* does not explicitly address burden-shifting, it identifies the landlord's theory of recovery as quasi-contractual: an equitable remedy. This suggests that the landlord would bear the burden of proving the value once the tenant has successfully proven a warranty breach. Indeed, as discussed above, evidence of problems alone can suffice to support an award of a total abatement. *See Bernstein, supra,* 649 A.2d at 1072. So if a tenant's

evidence rises to that level, then logically, the landlord must either rebut that evidence or adduce evidence of the rental unit's worth despite the deficiencies.

But we need not decide this issue here, as the trial court determined that a total abatement was required after concluding that "the extent of the rodent problem, the existence of other substantial defects in the property, and the danger posed to the small children living on the premises mitigate against finding in favor of Mr. Chibs." It was Fisher's testimony and proffered evidence that apprised the court of these problems. Chibs failed to rebut this evidence. Though the court accepted his testimony that he had renovated the house and that some form of inspection had taken place before Fisher moved into it (though no report was admitted into evidence), this evidence does not contradict evidence of the conditions for the relevant time period: when Fisher actually lived there. So even if Fisher had the burden of proving that the home had no value, she met that burden. *See id.; Javins, supra,* 138 U.S.App.D.C. at 381, 428 F.2d at 1083. In essence, the court simply weighed the parties' evidence and concluded that a total abatement was appropriate. We cannot say that this conclusion lacks support in the record.

Accordingly, the order of the trial court is

*Affirmed.*[3]

---

**2.** In his brief, Chibs points out that two of the court's factual findings fail to correspond with the court's supportive citations to the record. *See* Aplt. Br. at 2–3 (comparing the trial court order with cited sections of the plaintiff's proposed facts). A review of the record reveals these to be typos: the court cited the plaintiff's proposed findings of fact

instead of the defendant's proposed findings. The court's findings, however, do align with the defendant's proposed findings. *Compare* Order at 3, *with* Def's proposed findings of fact at ¶¶ 12–14. And, as discussed, those are well supported by trial testimony.

**3.** The trial court also properly apportioned the abatement between Fisher and DCHA.

The agency intervened and is therefore enti-
tled to recover its share of the rent paid. *See*

*Anderson, supra,* 923 A.2d at 865.