Matt BANKS, Appellant,

v.

EASTERN SAVINGS BANK, Appellee.

Nos. 08–CV–16, 08–CV–1281, 09–CV–427, 09–CV–428.

District of Columbia Court of Appeals.

Argued Nov. 19, 2010.
Decided Dec. 2, 2010.

Aaron G. Sokolow, with whom Morris R. Battino, Washington, DC, was on the brief, for appellant.

Stephen O. Hessler, Washington, DC, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

Tenant-appellant Matt Banks appeals three rulings of the trial court, all involving the same single-family dwelling owned by landlord-appellee Eastern Savings Bank (ESB). ESB became owner of the property pursuant to a trustee's deed after foreclosing on the mortgage of the prior landlord, Vasiliki Pappas. Banks claims ESB improperly served him with a notice to vacate because ESB did not provide a copy of that notice to the Rent Administrator within five days of delivery. Because our case law demands strict compliance with statutory and regulatory provisions in eviction proceedings, we agree and reverse the nonredeemable judgment of possession with respect to the basement unit of the property. We also agree that the trial court erred by enforcing a pre-foreclosure lease against Banks. A foreclosure action extinguishes all subservient leasehold estates. Therefore, pursuant to D.C.Code § 42–522 (2001), Banks' pre-foreclosure lease was vitiated by the foreclosure proceedings involving Pappas, converting Banks into a tenant at will. Because a tenancy at will "affect[s] the title to ... interest in real property[,]" the trial court also erred when it ordered the removal of Banks' *lis pendens* notice pursuant to D.C.Code § 42–1207(a) (2001). However, we affirm the trial court's denial of Banks' motion to intervene in an action involving the second-story unit of the property. Tenancies at will are not assignable possessory interests, and therefore the former tenant of the second story unit, Wedenha Kebede, never conferred any rights to the upstairs unit onto Banks. Without such an

interest, Banks acquired no basis on which to intervene pursuant to Super. Ct. Civ. R. 24.

## I.

Banks became a tenant of the basement unit of 2507 33rd St., S.E., Washington, D.C., on January 1, 1999, pursuant to a two-year renewable lease agreement with mortgagor Vasiliki Pappas. On February 1, 1999, Pappas entered into another lease with tenant Wedenha Kebede for the second-story bedroom of the property. Both leases forbade assignments without advance approval, limited occupancy to one person, and mandated compliance with municipal regulations. Neither lease was recorded with the District of Columbia Recorder of Deeds.

Pappas subsequently defaulted on a November 1998 loan with appellee ESB, which was secured by a deed of trust for the property. ESB instituted foreclosure proceedings against Pappas, and on April 3, 2001, it purchased the property at a foreclosure sale, acquiring title on June 27, 2001. *See Pappas v. Eastern Sav. Bank, FSB,* 911 A.2d 1230 (D.C.2006) (affirming foreclosure).

ESB later sought and obtained a judgment for possession of the property against Pappas, pursuant to a court order entered March 6, 2002. Carved out of that judgment for possession, however, were the two units held by Banks and Kebede, who intervened as defendants in the action to assert their possessory interests. Subsequently, ESB filed a Claim of Exemption form with the Department of Consumer and Regulatory Affairs, classifying the property as a single-family dwelling.

In December 2006, ESB prepared Notices to Vacate or Quit on both Banks and Kebede; Banks was served on January 10, 2006. Banks' notice was premised upon various violations of the January 1 lease with Pappas, including, *inter alia,* subletting the basement unit to a third party. ESB delivered a copy of the notice to the Rent Administrator on January 19, 2006.

Based upon a purported assignment of the second-story bedroom unit dated October 31, 2004, Banks moved to intervene in the action against tenant Kebede on May 29, 2007, claiming a valid interest in the upstairs unit. On December 13, 2007, the trial court denied Banks' motion to intervene, finding that Kebede's purported assignment to Banks was invalid under Kebede's pre-foreclosure lease with Pappas. Therefore, the court concluded that Banks had no interest in preventing ESB from gaining possession of the second-story unit. On January 11, 2008, the trial court (Judge Beck) entered a judgment for possession as to the upstairs bedroom unit against Kebede, from which Banks now appeals.

ESB commenced an action for possession of Banks' basement unit on September 22, 2008. After a bench trial, the trial court (Judge Beck) determined that the notice to correct or vacate was not deficient in any technical respect, that it properly notified Banks of the violations of his lease, and that Banks violated the notice to correct or vacate by failing to cure the violations of the pre-foreclosure lease. Based on these findings, the trial court entered a non-redeemable judgment for possession in ESB's favor. After unsuccessfully seeking a stay of the enforcement of the judgment pending appeal, Banks noted an appeal challenging the entry of judgment for possession.

On November 5, 2008, Banks filed a notice of *lis pendens* with the land records in the District of Columbia.[1] In the notice

---

1. Banks filed this notice pursuant to D.C.Code § 42–1207 (2001).

of *lis pendens,* Banks did not purport to claim any present right to the title of the property, but rather sought to maintain his "right to possession" and "purchase rights," with respect to the property. ESB filed a motion to clear the title, release the *lis pendens,* and obtain sanctions against Banks. After conducting a hearing, the trial court (Judge Bartnoff) determined that Banks's asserted interests in the property were not a proper subject for a *lis pendens,* and accordingly it ordered the notice of *lis pendens* released. The motion for sanctions was denied, which ESB does not contest on appeal. Banks now challenges the release of the *lis pendens.*

## II.

Banks first contests the sufficiency of ESB's Notice to Quit or Vacate. His argument centers on the applicability of 14 DCMR § 4300.1 (2004) of the Housing Chapter of Municipal Regulations, which provides:

> No tenant may be evicted from a rental unit for any reason other than for non-payment of rent unless the housing provider has properly served the tenant with a valid written notice to vacate and has *served a copy of that notice on the Rent Administrator not more than five (5) days after service on the tenant.*

*Id.* (emphasis added).

The trial court determined that Banks had been properly served with Notice to Quit or Vacate on January 10, 2006, and that ESB delivered a copy of this notice to the Rent Administrator on January 19, 2006—*nine days* after service on Banks. The trial court correctly determined that 14 DCMR § 4300.1 applies to a Notice to Quit or Vacate, but it nevertheless concluded that, "The regulatory requirements are not a jurisdictional bar to an eviction proceeding ... [and therefore] late service

is not necessarily fatal to an eviction proceeding based on a notice to correct or vacate." Banks contends that this holding was in error, asserting that strict compliance with housing regulations is a condition precedent to instituting eviction proceedings.

It is well settled that landlords must strictly adhere to all statutory notice provisions to successfully institute eviction proceedings. *See, e.g., Ayers v. Landow,* 666 A.2d 51, 57 (D.C.1995); *Jones v. Brawner Co.,* 435 A.2d 54, 56–57 (D.C. 1981). Similarly, when reviewing the application of the Rental Housing Commission's rules and regulations, we defer to the housing agency's authority to require the same strict compliance. *See Sawyer Prop. Mgmt. of Maryland, Inc. v. District of Columbia Rental Hous. Comm'n,* 877 A.2d 96, 104–08 (D.C.2005); *Temple v. District of Columbia Rental Hous. Comm'n,* 536 A.2d 1024 (D.C.1987). For instance, in *Charles E. Smith Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n,* 492 A.2d 875, 878 (D.C.1985), we noted the importance of complying with the RHC regulations pertaining to rent control reports. There, we reasoned, "Reporting requirements play an essential role in ensuring compliance with the rent laws. The failure to timely file reports ... can seriously impede, if not prevent, appropriate enforcement action, by depriving the Administrator of information which is needed to determine if a violation has occurred." *Id.*

Timely administrative notification is of greater importance in the context of eviction proceedings, given the policy concerns raised by the dispossession of property. 14 DCMR § 4300.1 plays an essential role in enforcing compliance with eviction procedures, by mandating ministerial notice. This regulation ensures a modicum of

agency oversight when a landlord seeks to evict.

■ We recognize the "hypertechnical" nature of this regulation and understand that no administrative action was instituted against ESB for its late notification. Nevertheless, we are persuaded that our strict adherence to statutory notice procedures compels a similar result when applying RHC regulations that affect eviction proceedings. *See Ayers,* 666 A.2d at 52 (strictly construing "hypertechnical" service of process statutory provisions). Therefore, because ESB's Notice to Quit or Vacate was defective, we reverse the judgment for possession.

### III.

■ Banks next contends that the trial court erroneously entered a nonredeemable judgment of possession predicated on a pre-foreclosure lease with mortgagor Pappas. ESB's Notice to Cure or Vacate specifically charged Banks with multiple violations of the Pappas lease, which the trial court relied on when entering judgment.

■ In *Administrator of Veterans Affairs v. Valentine,* 490 A.2d 1165, 1166 (D.C.1985), we held that statutory eviction provisions also "protect the *tenant* of a defaulting mortgagor who remains in her previously rented apartment after a foreclosure sale." *Accord Merriweather, et al. v. D.C. Bldg. Corp.,* 494 A.2d 1276, 1278–79 (D.C.1985). More recently, in *Molla v. Sanders,* 981 A.2d 1197, 1201 (D.C.2009), we explained that "the law affords protection to tenants who had enjoyed possession of the property pursuant to a valid lease with a prior owner, although they may no longer have a lawful claim to continue to be in possession pursuant to a lease the law will not enforce." There, we recognized that a foreclosure sale of property extinguishes any subordinate leases with

the mortgagor and the tenants who remain on the property "stand as tenants-at-will in relation to the new owner[.]" *Id; see* D.C.Code § 42–522 (2001) ("in case of a sale of real estate under mortgage or deed of trust ... and a conveyance thereof to the purchaser, the grantor in such mortgage or deed of trust ... or those in possession claiming under him, shall be ... construed to be tenants at will"); *see also Thompson v. Mazo,* 245 A.2d 122, 123 n. 1 (D.C.1968); *Thornhill v. Atlantic Life Ins. Co.,* 63 App.D.C. 184, 70 F.2d 846, 846–47 (1934).

Accordingly, Banks became a tenant at will by operation of law when ESB purchased the property at a foreclosure sale on April 3, 2001. His pre-existing rental agreement with Pappas was effectively extinguished at that juncture.

The trial court misconstrued our holding in *Valentine* to allow certain pre-foreclosure lease terms to survive foreclosure while others did not. This approach is inconsistent with our case law. The trial court erred when it predicated Banks' eviction on provisions of the pre-foreclosure lease.

### IV.

After identifying Banks' interest in the property as a tenancy at will, we now turn to the propriety of his November 5, 2008 notice of *lis pendens,* which the trial court ordered released by its order dated March 27, 2009.

D.C.Code § 42–1207(a) (2001), effective during Banks' *lis pendens* filing, states, "The pendency of an action ... *affecting the title to* or asserting a mortgage, lien, security interest, *or other interest in real property* ... does not constitute notice to, and shall not affect a party not a party thereto, unless a notice of the pendency of the action ... is filed for recordation...."

(Emphasis added.) The *lis pendens* statute has since been amended to expressly include tenancy interests and permit filing "only if the underlying action or proceeding *directly affects*" an ownership or tenancy interest in real property. *See* D.C.Code § 42–1207(b) (2010) (emphasis added).

 When interpreting a statute, its words "should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979). A tenancy at will is identified as an estate in D.C.Code § 42–522, thereby making it an "interest in real property" under a plain reading of both versions of the *lis pendens* statute. This plain interpretation advances the public policy behind *lis pendens* filings by enabling "interested third parties to discover the existence and scope of [pending] litigation." *1st Atlantic Guar. Corp. v. Tillerson*, 916 A.2d 153, 157 (D.C. 2007). Therefore, under the statutory provision at the relevant time, the litigation concerning the existence of a tenancy at will served as a proper basis for a notice of *lis pendens*.

The trial court erred when it ordered the removal of Banks' *lis pendens* notice. We therefore reverse its order.

## V.

When ESB instituted eviction proceedings against upstairs tenant Kebede, Banks moved to intervene pursuant to Super Ct. Civ. R. 24(a). Banks produced a one-page document, dated October 31, 2004, which purportedly assigned Kebede's interests in the second-story unit to him. On December 13, 2007, the trial court denied Banks' motion to intervene, noting that Kebede's pre-foreclosure lease with Pappas forbade assignment without advance approval.

As discussed *supra*, subordinate lease agreements are vitiated by foreclosure sales. Therefore, the trial court erred by enforcing a provision of Kebede's pre-foreclosure lease, which restricted assignments. Nevertheless, we must consider the legal effect of Kebede's purported assignment to Banks, because Kebede was merely a tenant at will at the time he attempted to assign his interest. See discussion *supra*.

In *Keroes v. Westchester Apartments*, 36 A.2d 263, 264 (D.C.1944), we noted that "many authorities hold that a tenancy at will, being determinable at any time, cannot be assigned or sublet by the tenant." The Restatement of Law embodies this approach, noting that tenancies at will are not freely transferrable interests in leased property. *See* RESTATEMENT (SECOND) OF PROP.: LANDLORD & TENANT § 15.1 (1977). In *Comedy v. Vito*, 492 A.2d 276, 279 (D.C. 1985), we implicitly adopted this view, stating, "When a common law tenancy at will is sublet, the tenancy is terminable on the date the landlord learns of the attempted sublease, unless the subtenant and the landlord agree otherwise; if the landlord consents, however, 'a new tenancy at will is created.'" *Id.* (quoting RESTATEMENT (SECOND) OF PROP.: LANDLORD & TENANT § 1.6 illus. d (1977)).

 It is uncontested that ESB never agreed to the attempted assignment and apparently did not even learn of it until May 2007. Super. Ct. Civ. R. 24(a) states that intervention shall be permitted only where "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *See, e.g., Jones v. Fon-*

*dufe,* 908 A.2d 1161, 1162–63 (D.C.2006). Without an effective assignment of the second-story unit, Banks could not prove that he had such an interest in the eviction proceeding against Kebede. Accordingly, we affirm the trial court's denial of Banks' motion to intervene, albeit on different rationale.

## VI.

For the reasons stated above, the order of September 22, 2008, is hereby reversed and remanded with instructions to vacate. The March 27, 2009 order re removal of *lis pendens* notice is hereby reversed. The denial of appellant's motion to intervene is hereby affirmed.

*So ordered.*