■ MUSHLAM, INC., Respondent, v MARIE NAZOR et al., Appellants. [916 NYS2d 25]—

Orders, Supreme Court, New York County (Barbara R. Kapnick, J.), entered April 7 and June 3, 2008, which, insofar as appealed from, directed defendants to pay plaintiff pendente lite

use and occupancy of $15,000 per month, commencing on May 1, 2008, unanimously reversed, on the law and the facts, without costs, and the matter remanded to the Supreme Court for a hearing to determine the reasonable value of use and occupancy.

Section 220 of the Real Property Law provides that in an action for use and occupancy "[t]he landlord may recover a *reasonable compensation* for the use and occupation of real property, by any person, under an agreement, not made by deed; and a parol lease or other agreement may be used as evidence of the amount to which he is entitled" (emphasis added). The reasonable value of use and occupancy is the fair market value of the premises after the expiration of the lease (*see e.g. Cooper v Schube*, 101 AD2d 737 [1984]; *see also Beacway Operating Corp. v Concert Arts Socy.*, 123 Misc 2d 452 [Civ Ct, NY County 1984]), and it is the landlord, not the tenant, who has the burden of proving reasonable value of use and occupancy (*Beacway* at 453).

In determining the reasonable value of use and occupancy, the rent reserved under the lease, while not necessarily conclusive, is probative (*id.*; *see also Eli Haddad Corp. v Redmond Studio*, 102 AD2d 730, 731 [1984]). ·

The record reflects that plaintiff landlord cross-moved for use and occupancy in the amount of $15,000 per month, relying on nothing more than its unsupported statement as to the rental value of the property. Defendants opposed, contending that the demand for use and occupancy was illegal since the building, which they alleged had at least three residential units, did not have the requisite certificate of occupancy under the Multiple Dwelling Law. Defendants asserted, in any event, that the cross motion was devoid of any evidentiary support for plaintiff's position as to the value of the leasehold. Defendants argued that this defect could not be remedied, since plaintiff was foreclosed from introducing new evidence in reply. In the absence of any competent proof as to value, defendants relied on the rent set forth in the expired lease, $3,600 per month, as evidence of the fair market value of the leasehold.

In reply on the cross motion, plaintiff landlord submitted as evidence of the rental value of the premises an unsigned lease for the sixth-floor penthouse setting forth a monthly rent of $15,000, and the affidavit of a real estate broker, who opined that based on comparable rentals in the Chelsea area and the lease under negotiation for the sixth floor, the fair market value of the leasehold was no less than $15,000 per month. Plaintiff also contended that the premises was populated solely by commercial tenants.

In surreply, defendants maintained that the comparisons used by plaintiff did not establish a rental value of $15,000. Defendants noted that the second- and third-floor premises were listed as available for rental on brokerage Web sites as of May 19, 2008, at rents of $81,000 annually (approximately $6,750 monthly). Defendants also attached Web pages showing that the sixth-floor premises was listed as available as of the same date for a monthly rent of $15,000. Defendants argued that the sixth-floor premises was not an apt comparison, however, since the landlord had just completed a gut renovation of the sixth floor, including a marble tub. Defendants asserted that the leases relied on by plaintiff as evidence that the building was solely commercial (i.e., rent for second-floor premises of $8,800, rent for one half of the third floor of $5,400, rent for one half of the fifth floor of $5,000) instead demonstrated that the fair market value of the premises was far less than the $15,000 use and occupancy sought by plaintiff. In arriving at its $15,000 figure, plaintiff relied on the affidavit of a real estate broker and an unsigned draft lease for the commercial, sixth-floor penthouse in the building. However, the record reveals that the remainder of plaintiff's signed leases for other units at the building contain far lower rents (e.g., $8,400 rent for 2008 set forth in the 2004 lease for the second floor; $5,400 rent for 2008 set forth in the 2006 lease for half of the third floor, $5,400 rent set forth in the lease for the other half of the third floor; and $5,000 rent for 2008 set forth in the 2005 lease extension for half of the fifth floor). Further, plaintiff failed to address defendants' other arguments in support of a lower use and occupancy, including allegations of residential use, with the landlord's knowledge, in violation of the certificate of occupancy (*see Hart-Zafra v Singh*, 16 AD3d 143 [2005]).

Thus, we find that the record contains insufficient evidence of fair market value. The disparity between the amount sought by plaintiff landlord ($15,000) and the amount set forth in the lease ($3,600)—a fourfold increase—raised questions sufficient to warrant a hearing as to fair market value, as did the disparity between the alleged value of the premises and the rental value for other units in the building (*see e.g. Trump CPS v Meyer*, 249 AD2d 22 [1998] [ordering a hearing to determine reasonable value of use and occupancy where the parties disputed the appropriate amount]; *South St. Ltd. Partnership v Jade Sea Rest.*, 187 AD2d 397 [1992]).

Accordingly, we remand the matter to the Supreme Court for a hearing to determine the fair market value of the leasehold. Concur—Andrias, J.P., Catterson, Moskowitz, Manzanet-Daniels and Román, JJ.