*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 12-CV-711

RICARDO HERNANDEZ, APPELLANT,

V.

BRYANT BANKS, *et al*., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(CAB-8640-08)

(Hon. Thomas J. Motley, Motions Judge)
(Hon. Erik P. Christian, Trial Judge)

(Argued September 20, 2013                    Decided February 6, 2014)

*Aaron Sokolow*, with whom *Morris R. Battino* was on the brief, for appellant.

*Russell M. Squire*, Student Attorney (No. 13056), with whom *Marc Bentzen*, Supervising Attorney, was on the brief, for appellees.

Before BECKWITH and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*: This case represents another chapter in the longstanding controversy over residential property located in the Northwest quadrant of the District of Columbia. We resolved one appeal relating to the property in an en banc opinion, *Hernandez v. Banks*, 65 A.3d 59 (D.C. 2013) (*Hernandez I*). There

the court held that a lease that appellees, Bryant and Sheillia Banks, signed with the mentally incapacitated previous owner of the property is "voidable, rather than inherently void"; we remanded the case to "the division to consider whether the trial court erred in determining that the lease between [the previous owner] and [the Bankses] was never disaffirmed." *Id*. at 74.

The instant case began when the 718 Associates Trustee of the 718 NW Trust ("718 Associates") purchased 718 Marietta Place, Northwest ("the Property") at a tax sale, and later sold it to the present owner, appellant Ricardo Hernandez. In order to remove the Bankses from the Property, 718 Associates filed an ejectment action in the trial court in December 2008. The Bankses failed to respond to the summons and complaint, and a default was entered on January 27, 2009, but on July 10, 2009, after a hearing, the trial court granted their motion to vacate the default. Following additional proceedings, the trial court ruled on May 18, 2012, that because the Bankses were tenants at will and were not sent the proper notice to quit, 718 Associates could not prevail on its effort to eject them. As part of its ejectment action, however, 718 Associates also demanded a monetary award of $25,000 for the Bankses' "use, enjoyment, and occupancy of the premises." The trial court denied the demand, concluding that the rental value of the Property when the Bankses took possession was "zero" because of its

uninhabitable condition, and the value of their use and occupation of the premises had not been established.  Mr. Hernandez challenges the trial court's rulings on appeal.

First, we conclude that the trial court did not abuse its discretion in vacating the entry of default against the Bankses.  Second, we hold that the trial court correctly determined that as tenants at will, the Bankses were entitled to, but never received, a proper notice to quit the property.  Third, we also hold that a person seeking damages in an ejectment action, under D.C. Code § 16-1109 (a)(2), must prove the clear and reasonable value of the use and occupancy of his or her property during the time in which possession was denied; we conclude that the trial court correctly ruled that Mr. Hernandez (and 718 Associates) failed to sustain their burden of proof as to damages.

**FACTUAL SUMMARY**

The record reveals that 718 Associates filed its 2008 complaint for ejectment and monies owed,[1] in the Civil Division of the Superior Court, under D.C. Code §

---

[1] The history leading up to the present action shows that 718 Associates has taken several steps to acquire and possess the Property.  In August 2001, the

(continued…)

16-1101, *et seq.* When the Bankses failed to answer the summons and complaint,

default was entered but after a hearing, the Honorable Thomas J. Motley granted

---

(…continued)
District of Columbia auctioned the Property due to the then owner's failure to pay the property taxes, and 718 Associates purchased the tax sale certificate when the Bankses were still paying rent to the owner. After purchasing the tax sale certificate, 718 Associates moved to quiet title on August 5, 2003, arguing that its tax deed divested the owner's estate of all interest and title to the Property and vested good title in 718 Associates. While the quiet title case was pending decision in the Superior Court, the owner died and her sister became personal representative of the estate. The suit to quiet title was resolved in October 2006, when 718 Associates and the owner's estate agreed to a settlement that granted 718 Associates exclusive title to the Property. The settlement included an affidavit, prepared by the estate's attorney and signed by the personal representative of the owner's estate, stating that there were no valid leases and no permissive tenants on the Property. After learning that the Property was occupied, 718 Associates initiated the first complaint for possession against the Bankses in the Landlord-Tenant Branch of the Superior Court on February 6, 2007 (case no. 2007 LTB 3926), but that case was dismissed without prejudice "after various continuances of the trial date." On April 9, 2008, 718 Associates lodged a second action to get possession of the Property, this time alleging that the Bankses were squatters (case no. 2008 LTB 10920 - the en banc case, *Hernandez I*, *supra*). Notwithstanding the pendency of the second action, 718 Associates launched a third step on November 25, 2008, when it offered to sell the Property to the Bankses under the District's Tenant Opportunity to Purchase Act ("TOPA"), for $397,500.00. The TOPA notice specifically stated: "This notice is offer of sale [and] is not a notice to vacate." The Bankses declined the opportunity to purchase. In July 2009, 718 Associates filed an action for declaratory judgment, seeking an order stating that the Bankses' right to purchase the Property under TOPA had expired. In 2010, the Landlord-Tenant Branch granted the declaratory judgment and allowed 718 Associates to sell the Property. 718 Associates sold the Property to Mr. Hernandez on June 30, 2010, for $397, 500.00. Mr. Hernandez received a trustee's deed for the Property, as well as an assignment of "the rights of the ejectment case," including the right "to collect all the monies that were owed."

the Bankses' motion to vacate the entry of default. Later, the Honorable Erik P. Christian held an evidentiary hearing regarding 718 Associates' complaint. At that hearing, Steven Calvert, trustee of the 718 NW Trust, and Mr. Hernandez testified on behalf of 718 Associates, and Mr. and Mrs. Banks testified as defense witnesses.

At the time of the hearing, Mrs. Banks, her husband, and their four children had occupied the Property for nine years. The testimony from Mr. Calvert and the Bankses, and documentary evidence, revealed that the Bankses had signed two lease documents with Patricia Elizabeth Spelios,[2] the prior owner of the Property. The first lease, dated March 17, 2001, was a standard form "lease with purchase option," for a term of two years. It obligated the Bankses to pay $500 per month at a Connecticut Avenue address, beginning on April 18, 2001, and ending on March 17, 2003. That lease also granted the Bankses an option to purchase the Property "as is" for the sum of $50,000, with a down payment of $1,800; and the lease stated that: "Tenants may renovate as they wish while living at 718 Marietta Place, N.W."

---

[2] Ms. Spelios' last name also appears in the record as "Speleos" and "Spilios."

The second lease, dated March 22, 2001, was not on a standard form, but it also was titled, "lease with purchase option." This lease was for a term beginning on March 22, 2001, and extending until "N/A," apparently creating an open-ended tenancy. As with the first lease, the Bankses were required to pay $500 per month for rent, but the rent was payable directly to the landlord, Ms. Spelios. The Bankses also were given "an exclusive option" to purchase the Property for a $500.00 down payment, "[r]ental payment deposits to b[e] held in trust by the Landlord," and "[c]ash or certified check for the balance on closing"; the remaining sum for the purchase was $50,000.00. In addition, the lease provided that the Bankses "may make any necessary changes to the [P]roperty," but the lease also specified that Ms. Spelios, as landlord, would "make necessary repairs to bathroom, kitchen (including appliances), exterior roof, interior ceiling and front and back porch."

During their testimony, the Bankses described the condition of the Property when they moved in and in later years: the Property lacked a functioning kitchen and bathroom; the ceilings, floors, and walls in the house were riddled with holes; the dining room and back room on the first floor "were in awful condition"; the "living room was in terrible shape" with a large hole and water seeping into it; and the front and back porches were unstable. Due to the stark condition of the house,

only two of the rooms were habitable immediately; the Bankses began to patch the holes, replace the floor, and build a working kitchen and bathroom. Their renovation work continued through 2005 and up to the time of the evidentiary hearing.

At the hearing, both parties sought to establish how much rent the Bankses had paid. The Bankses maintained that they paid rent directly to Ms. Spelios "up until 2003 until she entered the nursing home," and then paid money into the court registry after a 2007 lawsuit by 718 Associates. Mr. Calvert testified that the Bankses paid some monies into the court registry but owed money for other months, that from July 2009 to an unspecified time, the Bankses paid $9350, and that they currently owed $25,000 minus the $9350 sum in the court registry. Mr. Calvert further testified that 718 Associates considered the Bankses to be squatters, did not check the Property to see whether anyone occupied it until after the resolution of 718 Associates' quiet title action, and had never asked the Bankses for any rent money.

Mr. Calvert was unaware of any occupants when 718 Associates purchased the Property. He has never been inside the Property and has never had a key to it. He learned that the Property was occupied when 718 Associates sent a painter

there. Mr. Hernandez testified that the Bankses did not know that he owned the Property.

At the conclusion of the testimony, the Bankses asked Judge Christian to take judicial notice of the fact that they paid $6500 into the court registry in Case No. 2007 LTB 3926, and that by court order the funds were disbursed to 718 Associates on April 30, 2008. During his closing argument, Mr. Calvert asserted that the Bankses had paid $500 a month into the court registry from July 2009 to February 2011, for a total of $9840, but that they owed money for December 2005 to February 2007, and from April 2008 to July 2009, or a total of $25,000 minus the $9840 in the court registry. Counsel for the Bankses declared in his closing argument that the value of the Bankses' use and occupation of the Property without the improvements they made "is zero."[3]

Judge Christian credited the testimony of the Bankses and found, in part, that the Property "was uninhabitable" when the Bankses began living there in

---

[3] Initially, in response to Judge Christian's question concerning the value of the Property in the month of December 2005 assuming plaintiff owned it at that time, counsel for the Bankses stated that "if the use and occupation of the [P]roperty . . . without [the Bankses'] improvements was worth anything, it was simply the value of having a roof over their head, which [counsel] believe[d] customarily landlords contend . . . is one-third of the rent," or one-third of $500.

2001; "that it was riddled with holes and lacked a kitchen and working toilet, and that over the years [Mr.] Banks has worked on the Property and improved it, such that it currently has marble floors, patched walls, and a working kitchen with fixtures including a sink, stove, and refrigerator." Yet, Judge Christian determined that "the Bankses did not provide receipts or other evidence to establish the value of their improvements, nor were they able to provide dates for most of the renovations." The judge determined as a matter of law that the Bankses were tenants at will and had not received proper notice to quit under the Rental Housing Act. Finally, Judge Christian concluded that Mr. Hernandez had not sustained his burden with respect to his claim to damages for the Bankses use and occupancy of the Property.

## ANALYSIS

### *The Default and the Order to Vacate Default*

Mr. Hernandez emphasizes that the Bankses "concede that they did not [a]nswer the [c]omplaint until roughly six months <u>after</u> having validly received the [s]ummons and [c]omplaint," and he argues that because the Bankses "offered <u>no</u> other explanation" except "confusion" about the documents they received in

December 2008, "the trial court abused its discretion in granting [the Bankses'] [m]otion to [v]acate." Mr. Hernandez further contends that the trial court used the wrong legal standard in vacating the Bankses' default, and failed to consider other pertinent factors.

The Bankses generally support the trial court's order to vacate the entry of default, invoke their status as tenants at will who were entitled to a proper notice to quit, and assert that the court properly vacated the default "for good cause shown" and that the court did not commit legal error.

**The Factual Basis for the Entry of Default and the Order to Vacate Default**

Before setting forth the applicable standard of review and legal principles pertaining to an order to vacate default, we provide the factual basis for the Bankses' default and the decision of the trial court to vacate the default. The record and testimony at the July 10, 2009, hearing on the entry of default and the motion to vacate default[4] reveal that on December 13, 2008, Mr. Banks was served

---

[4] Two witnesses testified at the July 10, 2009 hearing – the process server, Gary Dean, and Mr. Banks. Also present at the hearing were counsel for 718 Associates and counsel for the Bankses. The counsel responded to certain questions posed by the trial judge.

with court papers related to the ejectment action. Mr. Banks asked the process server if a court date had been assigned to the case; the process server responded that he did not know. The process server followed up by mailing a copy of the summons and complaint to the Bankses within two weeks. Dorene Haney, a supervising attorney at the District of Columbia Law Students in Court, which represented the Bankses, did not receive a courtesy copy of the complaint against the Bankses. At the time of receipt, the Bankses believed that the papers concerned other pending lawsuits related to the Property, and they did not realize that a new lawsuit had just commenced.

When the Bankses failed to answer the complaint, 718 Associates pursued its action and on January 27, 2009, the Superior Court clerk's office, pursuant to Super. Ct. Civ. R. 55 (a),[5] issued a default against the Bankses for failure to answer the summons and complaint. On March 19, 2009, 718 Associates moved for entry of money judgment and judgment of possession under Super. Ct. Civ. R. 55 (b).[6] On April 28, 2009, 718 Associates appeared *ex parte* before Judge Motley for a

---

[5] Super. Ct. Civ. R 55 (a) provides in pertinent part: "*Entry*. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, the Clerk or the Court shall enter the party's default . . . ."

[6] Under Super. Ct. Civ. R. 55 (b) (1) and (2), "judgment by default" may be entered by the Clerk or by the Court, under specified circumstances.

hearing, and the judge denied its motion for judgment by default, without prejudice.

In early May 2009, the Bankses' counsel learned (in passing from court personnel) about the ejectment action, the Bankses' default, 718 Associates' pending motion, and the *ex parte* proof hearing on the motion (scheduled for May 22, 2009).  On May 15, the Bankses moved to vacate the default under Super. Ct. Civ. R. 55 (c),[7] and on May 19 they filed a verified answer to 718 Associates' complaint.[8]

After detailing the litigation between the parties since February 2007, Judge Motley summarized the parties' arguments.  He then discussed Super. Ct. Civ. R. 55 (c) and cases interpreting the rule, and he concluded that "good cause is shown in this matter."  Although Mr. Banks acknowledged that he had received the

---

[7] Super. Ct. Civ. R. 55 (c) states in pertinent part:  "*Setting Aside Default*. For good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part, the Court may set aside an entry of default . . . ."

[8] The parties appeared before Judge Duncan-Peters—standing in for Judge Motley—and agreed to convert the *ex parte* hearing to a status date to allow 718 Associates the opportunity to oppose the Bankses' motion to vacate the default. On May 28, 718 Associates filed its written opposition to the motion to vacate.

complaint after initially denying receipt, Judge Motley determined that there was a "severe mix up," in the context of the instant and other proceedings that related to the Property, and the "long-standing dispute between the parties with regard to [the] [P]roperty." He declared that "it is clear that it is not a case of a person saying I've received [the complaint] and I don't want to litigate this issue"; furthermore, he asserted that Mr. Banks' statement "that he did not remember did not indicate . . . that he in essence did not want to pursue this case." Thus, the judge found that the Bankses had reason to be confused.

Judge Motley also noted that the District's Rules of Civil Procedure and its case law "manifest[] a preference [for] resolution of disputes on the merits." He did not "believe the delay, under the entire circumstances of the case, is unduly prejudicial to [718 Associates]"; based upon case law, the judge was "not inclined to deny a motion to vacate default based upon a delay of four months when this [P]roperty has been the subject of litigation between the parties for over two years." The judge further observed that the Bankses "have made substantial efforts to rectify the[] procedural errors." Judge Motley found that counsel for the Bankses did not receive a courtesy copy of the complaint, even though 718 Associates' counsel knew the Bankses were represented by counsel and despite the fact that both counsels were involved with the separate "squatters case."

Consequently, Judge Motley ruled in favor of the Bankses and vacated the clerk's entry of the default.

**Standard of Review and Legal Principles Governing Default and an Order to Vacate Default**

There is a distinction between entry of default under Super. Ct. Civ. R. 55 (a), and entry of a default judgment under Rule 55 (b). "An entry of default is simply an interlocutory order, whereas a default judgment is a final judgment that terminates the litigation and decides the dispute." *Arthur v. District of Columbia*, 857 A.2d 473, 483-84 (D.C. 2004) (citing *Lockhart v. Cade*, 728 A.2d 65, 68 (D.C. 1999)) (internal quotation marks and other citations omitted). Rule 55 (c) governs setting aside a default and Super. Ct. Civ. R. 60 (b) applies to setting aside a default judgment. *Id*. at 484.

"[W]here the default was entered solely because appellants failed to answer the complaint, Rule 55 (c) sets forth the standard the trial court must apply when deciding whether to vacate the entry of default." *Restaurant Equip. & Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 956 (D.C. 2004) (footnote omitted). Rule 55 (c) requires that the movant "do two things: (1) establish good cause for vacating the default, and (2) file a verified answer presenting an adequate *prima facie* defense." *Id*. (citations omitted). "[G]ood cause is to be determined in the

light of the circumstances of each case." *Id*. (citing *Leiken v. Wilson*, 445 A.2d 993, 1000 (D.C. 1982)) (internal quotation marks omitted). "In making that determination, this court has always found the moving party's reasons for failing to plead or otherwise defend to be a key consideration." *Id*. at 956-57. Thus, in reviewing the trial court's order to vacate the entry of default, we determine whether the trial court abused its discretion in making the "good cause" determination.[9] *See Luna v. A.E. Engineering Servs., LLC*, 938 A.2d 744, 747 (D.C. 2007).

**Application of Legal Principles**

On this record we are satisfied that the trial court did not abuse its discretion in deciding to vacate the entry of default against the Bankses for good cause shown. Super. Ct. Civ. R. 55 (c); *Gutierrez*, 852 A.2d at 956. Judge Motley made the good cause determination based upon the circumstances of this case, where 718 Associates had filed several complaints against the Bankses, where the court concluded from Mr. Banks' testimony that there was a "severe mix up" due to the

---

[9] The trial court and the parties cite *Jones v. Hunt*, 298 A.2d 220 (D.C. 1972), but that case involved a motion to vacate a default judgment under Super. Ct. Civ. R. 60 (b)(6), rather than a motion to vacate entry of a default under Rule 55 (c).

existence of more than one lawsuit against the Bankses by 718 Associates, where there was no indication that the Bankses did not wish to prosecute this particular action, and where counsel for the Bankses was not served or otherwise informed that 718 Associates had lodged the ejectment complaint. Judge Motley also found that the Bankses filed a verified answer, and the answer contained several affirmative defenses. Moreover, the judge examined whether 718 Associates would be unduly prejudiced by a four month delay, and concluded that the delay was not unduly prejudicial given the long-standing two-year dispute between the parties and the ongoing litigation in other cases. In addition, Judge Motley stressed this court's strong judicial policy favoring adjudication on the merits. *See Walker v. Smith*, 499 A.2d 446, 448-49 (D.C. 1985). Consequently, "we are not persuaded that the trial court abused its discretion in granting the requested relief." *Luna*, *supra*, 938 A.2d at 747; *Gutierrez*, *supra*, 852 A.2d at 956.

### *The Merits of the Ejectment Action: Notice and Fair Use*

**Notice**

Mr. Hernandez argues that Judge Christian erred by concluding that the Bankses were entitled to a thirty-day written notice to quit under the District of

Columbia Rental Housing Act, D.C. Code § 42-3501.01, *et seq.*, because they are tenants at will.  He insists that the Rental Housing Act and the ejectment statute are "distinct legislative acts" and "[t]here is <u>no legal authority</u> for the premise that a notice requirement contained in the Rental Housing Act effects the procedures of a [c]ivil [a]ction in [e]jectment."  Mr. Hernandez further contends that "the trial court erred as a matter of law in citing to cases that stand for the premise that tenants of foreclosed-upon homeowners are entitled to eviction protection pursuant to the Rental Housing Act because [the Bankses] have never proven that they are tenants."  He maintains that "there has <u>never</u> been one single finding that the [Bankses] ever paid one single dollar to any owner of the Property," and that even if "sporadic and irregular payments alone would be sufficient to establish a tenancy, [the Bankses] have <u>never</u> been able to establish that they made even those."[10]

The Bankses assert that Judge Christian "correctly ruled that, under D.C. Code § 42-522[,] . . . [they] are tenants at will and subject to the protections of the Rental Housing Act."  Hence, "they are entitled to a thirty[-]day notice to quit,

---

[10] Mr. Hernandez asserts that in the squatters action, the Bankses <u>never</u> <u>introduced any evidence</u> that proved they made one rent payment to Ms. Spel[i]os, . . . [and] [t]he money orders that were introduced to allegedly prove such payments were later found to have been cashed by the [Bankses] themselves."

D.C. Code § 42-3505.01, and they cannot be evicted through an action for ejectment." They argue that Judge Christian "made a factual determination, based on testimony adduced at trial that [they] had paid rent to the Property's original owner, [Ms. Spel[i]os," and that they "were non-mortgagor tenants in possession before a foreclosure sale who held onto possession after."

The Bankses also acknowledge that "the terms of the original lease [with Ms. Spelios] do not apply because any such agreement between Ms. Spel[i]os and the Banks[es] would have been terminated by the intervening foreclosure sale[,] [b]ut [that] while the foreclosure sale extinguishes the *lease*, it does not extinguish the *tenancy*." Thus, they maintain, Judge Christian did not err in interpreting D.C. Code § 42-522, because as he ruled, "as holdover tenants of a defaulted mortgagor, [they] are 'tenants at will' as defined by statute[,] D.C. Code § 42-522." Furthermore, the Bankses support Judge Christian's factual finding that they have never been served a proper notice to quit, and cannot be evicted through an ejectment action.

**Standard of Review, Statutory Provisions, and Applicable Legal Principles**

We review bench trials both as to the facts and the law, but may not set aside a trial court's judgment "except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C. Code § 17-305 (a) (2012 Repl.). "We review . . . questions of statutory interpretation *de novo*. *Thompson v. United States*, 59 A.3d 961, 963 (D.C. 2013) (citation omitted). In interpreting statutes, "[w]e look to the plain meaning of a statute first, construing words according to their ordinary meaning." *Boyle v. Giral*, 820 A.2d 561, 568 (D.C. 2003) (citation omitted). "The literal words of [a] statute, however, are not the sole index to legislative intent, but rather are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Id.* (internal quotation marks and citations omitted). "If divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them . . . ." *Id.* "If related statutes conflict, we must reconcile them." *Id.* (citation omitted).

D.C. Code § 16-1101 (a)(1) (2012 Repl.) provides in pertinent part: "A civil action based upon a cause of action in ejectment, may be brought against: (1) the person actually occupying the premises claimed . . . ." On the question of required

proof, § 16-1104 (a)(1) specifies that "in an action of ejectment it is sufficient to entitle the plaintiff to relief to show that he is entitled, as against the defendant, to the immediate possession of the premises claimed, and that the defendant is: (1) in possession of the premises, and is holding adversely to the plaintiff . . . ."

D.C. Code, § 42-522 states that where there is a sale of real estate under a mortgage or deed of trust, a tenant in possession becomes a tenant at will:

> An estate at will is one held by the joint will of lessor and lessee, and which may be terminated at any time, as herein elsewhere provided, by either party; and such estate shall not exist or be created except by express contract; provided, however, that in case of a sale of real estate under mortgage or deed of trust or execution, and a conveyance thereof to the purchaser, the grantor in such mortgage or deed of trust, execution defendant, or those in possession claiming under him, shall be held and construed to be tenants at will, except in the case of a tenant holding under an unexpired lease for years, in writing, antedating the mortgage or deed of trust.

In accordance with § 42-3203, "[a] tenancy at will may be terminated by 30 days notice in writing by either landlord or tenant." Section 42-3505.01 (a) provides in relevant part that: "No tenant shall be evicted from a rental unit for any reason other than for nonpayment of rent unless the tenant has been served with a written notice to vacate which meets the requirements of this section." Section 42-3505.01

(a) further specifies, in part, that: "All notices to vacate shall contain a statement detailing the reasons for the eviction . . . ."

In enacting the aforementioned statutory provisions, "it was the intention of Congress to supply landlords with an expeditious statutory substitute for the ancient action of ejectment, available only if and when a tenancy shall be terminated . . . by a notice to quit." *Thornhill v. Atlantic Life Ins. Co.*, 70 F.2d 846, 846-47 (D.C. Cir. 1934). "But Congress did not intend a remedy too expeditious to be fair, and recognized the justice of giving a former owner of real estate, or his tenant, when sold out under a mortgage or deed of trust, a reasonable notice and time to peaceably remove himself and his belongings from the property sold before being made a defendant in a summary proceeding in court." *Id*. at 847. Thus, "[b]y one section of the Code Congress gave a remedy against a demonstrated abuse, while by other sections it gave reasonable restrictions on the exercise of that remedy." *Id*.

"To prove a case for ejectment, it is sufficient to entitle the plaintiff to relief to show that he is entitled, as against the defendant, to the immediate possession of the premises claimed, and that the defendant is . . . in possession of the premises, and is holding adversely to the plaintiff." *Molla v. Sanders*, 981 A.2d 1197, 1200

(D.C. 2009) (internal quotation marks omitted). "A landlord-tenant relationship does not arise by mere occupancy of the premises absent an express or implied contractual agreement, with both privity of estate and privity of contract, the occupier is in adverse possession as a 'squatter.'" *Nicholas v. Howard*, 459 A.2d 1039, 1040 (D.C. 1983) (citation omitted). Thus, the reference to "tenants at will" in D.C. Code § 42-522 "does not operate to impose contractual obligations, *i.e.*, for the payment of rent, upon the parties." *Id*. at 1041. "A foreclosure action extinguishes all subservient leasehold estates." *Banks (Matt) v. Eastern Savs. Bank*, 8 A.3d 1239, 1240 (D.C. 2010). "But the law affords protection to tenants who had enjoyed possession of the property pursuant to a valid lease with a prior owner, although they may no longer have a lawful claim to continue to be in possession pursuant to a lease the law will not enforce"; this is so because "[s]uch tenants do not lose their tenancy, but usually stand as tenants-at-will in relation to the new owner." *Molla*, *supra*, 981 A.2d at 1201; *see also Merriweather v. D.C. Building Corp.*, 494 A.2d 1276 (D.C. 1985) ("[T]he eviction protections [of the Rental Housing Act of 1980] survived foreclosure.").

**Application of Legal Principles**

Based upon the applicable legal principles, we conclude that Judge Christian correctly ruled that the Bankses were tenants at will following the foreclosure action against Ms. Spelios, and hence, under D.C. Code § 42-522, they are entitled to a thirty-day notice to quit. Mr. Hernandez' claim that the ejectment statute and the Rental Housing Act are separate and distinct legal acts which must be construed separately is not supported by this court's case law, which requires that related statutes, including those that may conflict, must be taken into consideration, and reconciled, if necessary. *See Boyle*, *supra*, 820 A.2d at 568. We applied these statutory construction principles in earlier cases, including *Thornhill*, *supra*, where we initially reconciled provisions relating to ejectment actions and also to notice requirements for tenants at will; *Molla*, a case involving more than one legal effort by the owner of property purchased at a foreclosure sale to gain possession of the premises, and *Banks*, a case concerning a tenant affected by a foreclosure sale, are instructive.

In *Molla*, *supra*, we held that "the law affords protection to tenants who had enjoyed possession of the property pursuant to a valid lease with a prior owner, although they may no longer have a lawful claim to continue to be in possession

pursuant to a lease the law will not enforce." 981 A.2d at 1201. Consequently, we recognized that an earlier trial judge's "ruling signified that appellant could not evict appellee through an action for ejectment, but must follow the eviction procedure set forth in the Rental Housing Act." *Id*. We determined in *Banks* that appellant "became a tenant at will by operation of law when [appellee] purchased the property at a foreclosure sale." 8 A.3d at 1243. As a tenant at will, he was entitled to a notice to quit before the new owner of the property could legally evict him. *Id*.

Similarly, in *Administrator of Veterans Affairs v. Valentine*, 490 A.2d 1165, 1166 (D.C. 1985), we declared that "statutory eviction restrictions . . . protect the *tenant* of a defaulting mortgagor who remains in her previously rented apartment after a foreclosure sale." In reaching this conclusion, we recognized that "eviction restrictions . . . protect the rights of tenants and therefore must be construed liberally." *Id*. at 1168 (citations omitted). *See also Merriweather*, *supra*, 494 A.2d at 1276.

Mr. Hernandez asks this court to allow him to eject the Bankses without first satisfying the strictures of the Rental Housing Act. However, as D.C. Code § 42-522 and our precedent make clear, non-mortgagor holdover tenants at will of a

foreclosed property are entitled to the prophylaxes of the Act. *See Banks*, *supra*, 981 A.2d at 1201; *Valentine*, *supra*, 490 A.2d at 1166. For a housing provider to recover possession of a rental unit, the Act requires thirty-day written notice of any violations that have caused the eviction. D.C. Code §§ 42-3501.01 (b), -3203. Mr. Hernandez freely admits—and the trial court found—that neither he nor his predecessors in interest have ever served the Bankses with a notice to quit the Property. He cites *Anderson v. William J. Davis, Inc.*, 553 A.2d 648, 649-50 (D.C. 1989), for the proposition that "a squatter is <u>never</u> entitled to a thirty-day notice[,]" (emphasis included in original).

Our holding in *Anderson*, though, is easily distinguishable from the instant case. The defendant in *Anderson* never paid rent to the plaintiff for use of the apartment and was accordingly never found to be a legal tenant with rights under the Rental Housing Act. *Id.* at 649. In the instant case, the trial court found that the Bankses paid rent for a period of time to the original owner and accordingly found them to be holdover tenants. *Anderson* states the general rule that tenants at sufferance are entitled to notice protection by the Rental Housing Act but found that rule did not apply to squatters who only exchanged services rather than money for rent. *Id.* Rather than *Anderson*, the Bankses' case seems analogous to *Nicholas*, where the new owners sought to evict former tenants of the prior owners

who were still in possession. *Id*. at 1039. This court in *Nicholas* held the occupants to be tenants at will even though they did not pay rent to or have a valid lease with the current owners. *Id.* Mr. Hernandez has argued that he did not serve the Bankses with a written eviction notice because they were simply squatters trespassing on his property. However, as we have determined, the Bankses were actually tenants at will entitled to notice under the Rental Housing Act. Therefore, their case is more like *Nicholas*, *Banks*, or *Molla* than it is like *Anderson*. Since the Bankses have not been served with the required notice, we hold that the Rental Housing Act protects them unless and until the title owner of the Property satisfies the eviction procedures. In sum, we discern no legal error by Judge Christian in concluding that the Bankses were entitled to a notice to quit.

**Damages For the Clear Value of the Bankses' Use and Occupancy**

Mr. Banks challenges Judge Christian's conclusion that he failed to establish the "clear value" of the Bankses "use and occupancy" of the Property in his effort to obtain a money judgment for the Bankses use and occupancy of the Property. He takes issue with the trial court's finding that based on the Bankses' testimony, "when they first took possession, . . . the rental value of the Property was zero." He maintains that, "the fact that the [Bankses] agreed to pay $500 per month in

2001 for the Property, knowing the condition of the Property at that time, is *prima*[] *facie* evidence that the fair market value of the Property <u>cannot be less than</u> $500 per month." He asserts that the Bankses agreed to pay $500 per month after 718 Associates became the owner of the Property, and that the Bankses' attorney stipulated to that amount. He further contends that because of the statute of limitations, Judge Christian erred as a matter of law in relying on the Bankses' testimony about the condition of the Property when they first entered into possession in 2001, because "the only relevant timeframe of the case was December 2008 through the date of trial," or "December 2005 through February 2011."

The Bankses contend that Judge Christian's ruling "was essentially a . . . factual finding[] as to the value of the Property when [the Bankses] moved in and in the years since," and did not constitute "an error of law." They emphasize not only the judge's findings that the Property was "uninhabitable" and the value was "zero" when they moved in, but also Judge Christian's finding that they "had made considerable improvements to the Property, laying marble floors, patching walls, and installing a working kitchen." The Bankses also claim that Mr. Hernandez' "reliance on the original lease to show the fair occupancy value is also flawed from

a legal standpoint," essentially because the foreclosure sale to 718 Associates extinguished the Bankses' lease with Ms. Spelios.

In addressing these arguments, we are guided by the following standard of review. "On appeal from a bench trial, we review the trial court's legal conclusions *de novo*, but defer to its factual findings if they are supported by the record." *Chibs v. Fisher*, 960 A.2d 588, 589 (D.C. 2008) (citing D.C. Code § 17-305 (2001)).

**Statutory Provision and Legal Principles Governing Money Judgment For Use and Occupancy Under the Ejectment Statute**

In an ejectment action, D.C. Code § 16-1109 (a)(2) (2012 Repl.) allows a plaintiff to "embody in his complaint, in a separate count, a claim for the . . . clear value of the use and occupation of the property sued for—extending to the time of the verdict, and also damages for waste or injury to the premises during that period." *See Murray v. Goodwin*, 852 A.2d 957, 958 (D.C. 2004); *Valentine*, *supra*, 490 A.2d at 1169. Generally, these damages are based on the reasonable value of a tenant's use and occupancy of the property. *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 107 n.19 (D.C. 2007) (citing *Habib v. Thurston*, 517 A.2d 1, 13 n.16, 18 (D.C. 1985)). "Reasonable value is determined presumptively — but not conclusively — by reference to the rent the tenant had been paying." *Id.*

(citing *Habib*, *supra*; *Byrne v. Morrison*, 25 App. D.C. 72, 75 (D.C. Cir. 1905)) (internal quotation marks and other citation omitted). The landlord has the burden of proving reasonable value for use and occupancy. *See Chibs*, *supra*, 960 A.2d at 590.

Although the District's existing case law is limited on the issue of clear value for use and occupancy, other jurisdictions have identified similar legal principles to those set forth above, as well as other principles. In *Mushlam, Inc. v. Nazor*, 916 N.Y.S.2d 25 (N.Y. App. Div. 2011), the court declared that "it is the landlord, not the tenant, who has the burden of proving reasonable value of use and occupancy." *Id.* at 26 (citation omitted). Reasonable value of use and occupancy is defined as "the fair market value of the premises after the expiration of the lease." *Id.* (citations omitted). "In determining reasonable value of use and occupancy, the rent reserved under the lease, while not necessarily conclusive, is probative." *Id.* (citation omitted); *see also Charles Downey Family Ltd. P'ship v. S & V Liquor, Inc.*, 880 N.E.2d 322, 326 (Ind. Ct. App. 2008) ("The measure of damages when a tenant unlawfully holds over, and no special damages are alleged, . . . is the rental value of the premises during the time the same are so detained.") (citations omitted). New Hampshire has a similar position regarding the measure of damages for use and occupancy: "In the absence of proof of special damages,

the general rule is that the proper measure of recovery against a tenant for failure to surrender the premises is the reasonable rental value for the time possession is withheld." *Greelish v. Wood*, 914 A.2d 1211, 1214 (N.H. 2006) (citation omitted). New Hampshire explains that its position "is consistent with the view of the RESTATEMENT (SECOND) OF PROPERTY, which states that a landlord is entitled to recover from a tenant who improperly holds over after the termination of a lease for the use and occupation of the leased property during the holdover period at a rate based on the previous rental rate, or on the proven reasonable value independently established if that differs from the previous rental rate." *Greelish*, *supra*, 914 A. 2d at 1214 (citing RESTATEMENT (SECOND) OF PROPERTY, *Landlord and Tenant* § 14.5 (1977)) (internal quotation marks omitted).

We hold that a person seeking damages under D.C. Code § 16-1109 (a)(2) must prove the clear and reasonable value of the use and occupancy of his or her property, during the time in which possession was denied. Relevant considerations may include: (a) the amount of monthly rent previously paid under a lease by the holdover tenant, or (b) the reasonable rent demanded of a tenant by the current owner of the property, or (c) the fair rental market value of the property, or (d) the reasonable value based on a commonly accepted independent measure of damages for use and occupancy.

Here, Judge Christian correctly placed the burden of persuasion on Mr. Hernandez to prove damages for the clear value of the Bankses' use and occupancy of the Property after 718 Associates assumed ownership following foreclosure on Ms. Spelios. The remaining question on this record is whether Judge Christian properly (a) focused on the value of the Property in 2001 as a starting point for measuring use and occupancy damages during the period of 718 Associates' and Mr. Hernandez' ownership of the Property, and (b) rejected Mr. Hernandez' assertion of reasonable value of use and occupancy based on the monthly rent of $500 in the Bankses' lease with Ms. Spelios.

For the reasons set forth below, we hold that the relevant time period for measuring use and occupancy damages with respect to a holdover tenant who denies possession to a new owner[11] begins on the date on which the person seeking such damages acquired legal title to the Property and continues to the date of verdict on his damages. We also conclude that on this record Judge Christian properly rejected Mr. Hernandez' assertion of reasonable value of use and occupancy of the Property based on the monthly rent of $500 in the Bankses' lease with Ms. Spelios.

---

[11] We reiterate that in this case the Bankses are entitled to a proper notice to quit under the Rental Housing Act before they may be evicted.

Under the March 22, 2001, lease with purchase option that the Bankses signed with Ms. Spelios, rental payment deposits were to be held in trust by Ms. Spelios. The lease placed the burden of making "necessary repairs to bathroom, kitchen (including appliances), exterior roof, interior ceiling and front and back porch" on Ms. Spelios. Given the terms of the lease with purchase option, the monthly rental payment deposits of $500 were not a true measure of the reasonable rental value of the Property even in 2001. But, the relevant time period for determining the clear value of use and occupancy, or the reasonable rental value under D.C. Code § 16-1109 was not 2001; rather, it was beginning in October 2006 for 718 Associates when it acquired exclusive title to the Property, and June 2010 for Mr. Hernandez when he purchased the Property from 718 Associates.

Neither 718 Associates nor Mr. Hernandez presented any credible evidence as to the reasonable value of use and occupancy of the Property in 2006, or in June 2010. Instead of presenting evidence as to the condition of the Property and its reasonable rental or fair market value from October 2006 through the time of trial, they relied upon the $500 monthly rent deposit payments specified in the Bankses 2001 lease with purchase option. Consequently, we are satisfied that Judge Christian properly concluded that Mr. Hernandez "has not proved entitlement to any damages" because he has not established the "'clear value' of anything."

In sum, we conclude that the trial court did not abuse its discretion in vacating the entry of default against the Bankses. We also hold that the trial court correctly determined that as tenants at will, the Bankses were entitled to but never received a proper notice to quit the Property. Finally, we also hold that a person seeking damages in an ejectment action, under D.C. Code § 16-1109 (a)(2), must prove the clear and reasonable value of the use and occupancy of his or her property during the time in which possession was denied; we conclude that the trial court correctly ruled that Mr. Hernandez (and 718 Associates) failed to sustain their burden of proof as to damages.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*